394 S.E.2d 50

**Shirley A. MEADE**

**v.**

**Stephen W. SLONAKER, Alfred K. Landis, and Alton E. Wolfe, Jr.**

**No. 19302.**

Supreme Court of Appeals
of West Virginia.

May 17, 1990.

---

J. David Judy, III, Judy & Judy, Moorefield, for Shirley A. Meade.

George C. Leslie and Karen S. Rodgers, Kay, Casto, Chaney, Love & Wise, Charleston, for Stephen W. Slonaker.

Charles E. Parsons, Romney, for Alfred K. Landis.

Stephen W. Moreland, Moreland and Moreland, Romney, for Alton E. Wolfe, Jr.

NEELY, Chief Justice:

Shirley Meade, the plaintiff, appeals from the judgment of the Circuit Court of Hampshire County directing a verdict in favor of two of the defendants, Stephen Slonaker and Alfred Landis, in this action for breach of contract and fraud in connection with the sale of land. A jury verdict was returned against the other defendant, Alton Wolfe Jr., which judgment has been satisfied; the plaintiff also appeals the trial court's refusal to award attorney's fees to the plaintiff in her action against Mr. Wolfe.

In 1988, Shirley Meade was living rent-free in a trailer sited on land owned by Lucille Timbrook. Mrs. Timbrook's land, known as the McKee Farm, comprised about 118 acres in Hampshire County, straddling the Virginia border. Mrs. Meade's son, Alton Wolfe, Jr., a man with some experience in land speculation, wished to purchase the McKee Farm. According to the plaintiff, she and Mr. Wolfe agreed orally that Mrs. Meade would bring together Mr. Wolfe and Mrs. Timbrook, in exchange for which Mr. Wolfe would, if successful in acquiring the McKee Farm, give Mrs. Meade $10,000 and 10 acres of the land around Mrs. Meade's trailer site. The alleged agreement was never reduced to writing.

On 13 March 1988, Mr. Wolfe, Mrs. Meade, and Mrs. Timbrook did indeed meet and negotiate for the sale of the farm to Mr. Wolfe. Mr. Wolfe offered $75,000 for the farm, which Mrs. Timbrook accepted in

principle, subject to the consent of five of Mrs. Timbrook's relatives who also had interests in the property. There was no written agreement at this time. Mr. Wolfe offered $10,000 to bind the deal, but Mrs. Timbrook refused to enter a binding contract before obtaining her relatives' consent to the sale. At this meeting, Mrs. Meade apparently did little but introduce the principals. No mention was made of the supposed agreement between Mrs. Meade and Mr. Wolfe that he would convey to her money and land. Indeed, the very next day Mrs. Meade herself called Mrs. Timbrook and offered to buy the ten acres around her trailer site. Mrs. Timbrook refused because she had already promised to sell the farm to Mr. Wolfe.

In June 1988, Mr. Wolfe requested a $40,000 loan from his friend Alfred Landis (in order to purchase the McKee Farm). Mr. Landis agreed, borrowing the money himself from a friend, on a demand note secured by a deed of trust on his own house. Mr. Landis had no apparent interest in the McKee Farm itself. Also in June, Mr. Wolfe offered to sell some of the McKee Farm to his friend Stephen Slonaker.

On 1 July 1988, Mr. Wolfe and Mrs. Timbrook executed a written purchase-and-sale agreement for the McKee Farm. The closing was delayed, and another contract was executed on 5 August 1988. Mr. Wolfe at that time expressed some reservations about the sale, and also told Mr. Landis this. On 9 August 1988, Mr. Landis paid Mr. Wolfe $40,000, leaving to Mr. Wolfe's judgment how to manage the money. At the closing on 12 August, Stephen Slonaker was successfully substituted as sole purchaser; apparently, he also assumed the loan from Mr. Landis.

To repay the loan from Mr. Landis, Mr. Slonaker in October 1988 deeded Mr. Landis about half the McKee Farm, some 55 acres. Sometime thereafter, Mr. Slonaker deeded Mr. Wolfe several acres, for no apparent consideration. The parcel deeded to Mr. Wolfe netted him a quick $25,000

profit on a turn-around sale. Mrs. Meade, Mr. Wolfe's mother, was not involved in any of this business after she had first brought together Mr. Wolfe and Mrs. Timbrook. Indeed, in October 1988 Mr. Slonaker had Mrs. Meade evicted from the trailer site she had occupied at the grace of Mrs. Timbrook. In the final analysis, therefore, Mr. Wolfe had invested no money but had pocketed $25,000, and Mrs. Meade had no land, no money, and no rent-free trailer site.

Mrs. Meade apparently suspected some scheme or conspiracy among Mr. Wolfe, Mr. Slonaker, and Mr. Landis to defraud her of the land her son allegedly had promised her. She brought this action against the three in the Circuit Court of Hampshire County, seeking conveyance of ten acres of the McKee Farm, $50,000 in compensatory damages, and $50,000 in punitive damages. The trial judge found that there was insufficient evidence of fraud, conspiracy, or interference with contract on the part of Mr. Slonaker or Mr. Landis, and directed a verdict in their favor. The case went to the jury against Mr. Wolfe alone. Their verdict was in favor of Mrs. Meade for $7000 in "compensatory damages" (apparently a reduction from the "contract price" of $10,000), $7000 in "economic losses" (apparently consequential damages for breach of contract), and nominal punitive damages of one dollar.

Mr. Wolfe has satisfied the $14,001 judgment and obtained a signed release of judgment from Mrs. Meade. That judgment is therefore not directly before us. Mrs. Meade has appealed the trial court's directed verdict in favor of the other defendants, Mr. Slonaker and Mr. Landis.[1] We now affirm the judgment of the circuit court.

 Mrs. Meade sued the three defendants jointly and severally for her alleged losses in connection with this business. As to those compensatory damages, she is entitled to only one recovery. This she has received from Mr. Wolfe. As this Court has held:

---

1. Mrs. Meade also appeals certain of the trial judge's rulings on evidentiary matters and attor-

neys' fees. We find no merit in these contentions on appeal.

It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories. Syllabus Point 7, *Harless v. First National Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982). As a matter of law, Mrs. Meade is not entitled to recover from Mr. Slonaker or Mr. Landis any more compensatory damages than she has already received from Mr. Wolfe.

The satisfaction of Mrs. Meade's claim for compensatory damages, however, would not bar any claim Mrs. Meade has for punitive damages against Mr. Slonaker and Mr. Landis or for conveyance in equity of the land itself Mrs. Meade claims is hers. We must therefore consider the merits of Mrs. Meade's claim against the two and whether the trial court was correct in dismissing them from the case.

Mrs. Meade asserts that Mr. Landis and Mr. Slonaker are liable to her on the contract she allegedly entered with Mr. Wolfe, as principals on a *"de facto* partnership" theory. In the alternative, she claims, if they are not liable on the contract as principals, they should be liable for tortious interference with the same contract. A prerequisite for either claim is that there did exist a valid, enforceable contract between Mrs. Meade and Mr. Wolfe. It is clear from the undisputed facts of record, however, that there was no such contract.[2]

First, the Statute of Frauds was not complied with. The agreement between Mr. Wolfe and Mrs. Meade, if agreement there was, was not in writing, as required by *W.Va.Code*, 36–1–3 [1849]. Mrs. Meade argues that the circumstances obviate compliance with the Statute of Frauds. As this Court has held:

A party to an oral contract for the sale of land, to which the statute of frauds is applicable, may, by conduct on his part, be estopped in equity to assert the statute of frauds as a defense to such contract.

An oral contract for the sale of land, as to which a party to it is estopped to assert in equity the defense of the statute of frauds, but which is in all other respects sufficient, is a binding and enforceable contract.

Syllabus Points 1 and 2, *Ross v. Midelburg*, 129 W.Va. 851, 42 S.E.2d 185 (1947).

We need not decide, however, whether the circumstances were such as to take this alleged agreement out of the Statute of Frauds, because, the Statute notwithstanding, the agreement was not specific enough to be enforceable. That is to say, in the words of *Ross, supra,* the agreement was not "in all other respects sufficient." As this Court has held:

In a suit for the specific execution of a contract for the purchase of land, where neither the contract itself, nor the extrinsic proof of the surrounding circumstances, identifies or defines the tract or boundaries of the land, or refers to anything by which it may be identified with reasonable certainty, the court will not decree a specific performance, but will dismiss the bill.

Syllabus Point 3, *Crawford v. Workman*, 64 W.Va. 10, 61 S.E. 319 (1908). An agreement to convey "ten acres of land" (out of a much larger parcel), even if the ten acres is conceded to include an identifiable smaller parcel (Mrs. Meade's trailer site), is too vague for a court to determine what land is at issue. It follows, then, that even if the alleged agreement had been memorialized in a writing, there would have existed no enforceable contract between the parties.

Lacking any evidence of record that Mr. Landis or Mr. Slonaker could be liable to Mrs. Meade on any tort or contract theory of recovery, the trial court was correct in dismissing Mrs. Meade's claim as to Mr. Landis and Mr. Slonaker.

---

**2.** Because we hold that there was no underlying contract in this case, we decline to decide whether the plaintiff has made out any other elements for a *prima facie* case of breach of contract or tortious interference with contract.

**70**

For the foregoing reasons, we affirm the judgment of the Circuit Court of Hampshire County.

Affirmed.