737 S.E.2d 229

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant Below, Petitioner**

v.

**Jill F. SCHATKEN and Steven N. Schatken, Plaintiffs Below, Respondents.**

No. 11–1142.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 23, 2012.

Decided Nov. 16, 2012.

E. Kay Fuller, Esq., Michael M. Stevens, Esq., Martin & Seibert, L.C., Martinsburg, WV, for Petitioner.

Laura C. Davis, Esq., Stephen G. Skinner, Esq., Andrew C. Skinner, Esq., Skinner Law Firm, Charles Town, WV, for Respondents.

J. Michael Benninger, Benninger Law, Morgantown, WV, Christopher M. Turak, Gold Khourey & Turak, LC, Moundsville, WV, for Amicus Curiae, West Virginia Association of Justice's.

WORKMAN, Justice:

Petitioner/defendant below, State Farm Mutual Automobile Insurance Company (hereinafter "petitioner" or "State Farm"), appeals the July 7, 2011, order of the Circuit Court of Jefferson County, granting partial summary judgment to respondents/plaintiffs below, Jill and Steven Schatken, (hereinafter "respondents" or "Schatkens") on their declaratory judgment action. The circuit court found that both the "non-duplication" provision and reimbursement provision in State Farm's underinsured motorist policy violate W. Va.Code § 33–6–31(b) (Repl. Vol. 2011). For the reasons set forth more fully below, we reverse the circuit court's order awarding partial summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

On December 19, 2008, the Schatkens were injured when their vehicle was struck by a vehicle driven by 19–year–old Ida Trayter. Trayter was insured by Nationwide and carried $25,000.00 in liability coverage. Respondent Jill Schatken incurred $29,368.47 in medical expenses as a result of her injuries. The Schatkens were insured by State Farm and carried a policy which contained $5,000.00 in medical payments coverage, as well as $250,000.00 in underinsured motorist coverage. Nationwide tendered its liability limits of $25,000.00, to which State Farm consented and waived subrogation. The Schatkens exhausted the $5,000.00 in medical payments coverage in partial payment of Jill Schatken's medical bills.

Settlement negotiations then began between the Schatkens' counsel and State Farm for Jill Schatken's underinsured motorist claim.[1] At some point during negotiations, the claims adjuster advised the Schatkens' counsel that she was basing her settlement offers on the "net" value of the claim after reduction of the $25,000.00 liability limits and $5,000.00 medical payments already received by Ms. Schatken from the full settlement value, pursuant to the "non-

---

1. The Schatkens demanded $125,000.00; State Farm offered $30,000.00 "new money." The Schatkens reduced their demand to $110,000.00; State Farm increased their offer to $35,000.00 and then to $37,000.00. The Schatkens then reduced their demand to $90,000.00; State Farm refused to increase their offer above $37,000.00.

duplication" provision in the State Farm policy, which provides:

> The most *we* will pay for all damage resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury* is the lesser of:
>
> 1. the limit shown under "Each Person"; or
>
> 2. **the amount of all damages resulting from that *bodily injury*, reduced by:**
>
> * * *
>
> > **c. any damages that have already been paid or that are payable as expenses under Medical Payments Coverage of this policy,** the medical payments coverage of any other policy, or other similar vehicle insurance.

(second emphasis added). The Schatkens took the position that such "reduction" of the offers made by State Farm by the amounts paid under the medical payments coverage violated W. Va.Code § 33–6–31(b), which states, in part:

> That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.... *No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.*

(emphasis added). As a result, the Schatkens filed suit against State Farm, its claims adjuster, and the adjuster's unidentified supervisors, alleging personal injury of Jill Schatken and loss of consortium of Steven Schatken pursuant to the underinsured motorist coverage, breach of contract and bad faith, violation of the Unfair Trade Practices Act, and seeking a declaratory judgment that the non-duplication provision in State Farm's policy violated W. Va.Code § 33–6–31(b).

Shortly after filing suit, the Schatkens moved for partial summary judgment on their declaratory judgment action regarding the non-duplication provision. In their response in opposition to the Schatkens' motion for summary judgment, State Farm mentioned as part of its "Statement of Facts" that the policy also contained "reimbursement" language as well. The reimbursement provision states:

> 12. Our Right to Recover Our Payments
> * * *
>
> b. Reimbursement.
>
> If *we* make payment under this policy and the *person* to or for whom *we* make payment recovers or has recovered from another party, then that *person* must:
>
> > (1) hold in trust for *us* the proceeds of any recovery; and
> >
> > (2) reimburse *us* to the extent of *our* payment.

After citing this provision, State Farm stated in its brief that "because Mrs. Schatken received payment from Ida Traytor and her liability insurer, Nationwide, she is required to reimburse State Farm the $5,000.00 it paid in medical payments coverage." As a result of this statement in State Farm's brief, in their reply, the Schatkens argued that the reimbursement provision likewise violated W. Va.Code § 33–6–31(b) and that they were entitled to declaratory relief as to that provision as well. State Farm moved to strike that portion of the Schatkens' brief seeking declaratory relief as to the validity of the reimbursement language, arguing that the reimbursement provision was not originally plead in the declaratory judgment complaint and had not been invoked as to Jill Schatken's claim. The Schatkens responded that by virtue of the statement in their brief, State Farm had made the reimbursement provision an issue.

The circuit court granted partial summary judgment as to the non-duplication provision, denied the motion to strike, and established a new briefing schedule for the reimbursement issue. State Farm argued that the reimbursement provision had been specifically upheld in *Ferrell v. Nationwide Mut. Ins. Co.,* 217 W.Va. 243, 617 S.E.2d 790 (2005), but

alternatively argued: 1) that the provision did not constitute a "justiciable issue" in the instant action as it had not been invoked; and 2) it did not intend to invoke the reimbursement provision in this case. The circuit court found that the reimbursement provision was invoked by State Farm, creating a justiciable claim, and granted summary judgment to the Schatkens, finding that the reimbursement provision likewise violated W. Va. Code § 33–6–31(b).

As to the circuit court's rationale, it found that the non-duplication provision violated the plain language of W Va.Code § 33–6–31(b) which prohibits reduction of "sums payable" under underinsured motorist coverage by payments made under the insured's policy. In particular, the court concluded that the non-duplication provision "seeks to reduce *available underinsured motorist benefits* by Plaintiffs' medical payments coverage" and therefore violates the public policy of full compensation articulated in several of this Court's opinions regarding underinsured motorist coverage (emphasis added).

With respect to the reimbursement provision, the court found that an August 20, 2009, letter from State Farm to respondents' counsel regarding medical payments coverage and including the reimbursement language reflected State Farm's intention to enforce its reimbursement provision, creating a justiciable controversy.[2] The court then found that the reimbursement provision was State Farm's attempt to do indirectly, what W. Va.Code § 33–6–31(b) prohibited it from doing directly. In making these findings, the circuit court rejected wholesale State Farm's argument that both the non-duplication and reimbursement provisions simply prevent a claimant from obtaining a double recovery. The court found that by inclusion of this language in W. Va.Code § 33–6–31(b), the Legislature intended to accept the risk of double recovery in favor of ensuring full compensation.[3] This appeal followed.

## II. STANDARD OF REVIEW

 This Court has held that

" '[t]he interpretation of an insurance contract[ ] . . . is a legal determination that, like a lower court's grant of summary judgement [sic], shall be reviewed *de novo* on appeal.' Syllabus point 2, *Riffe v. Home Finders Associates, Inc.,* 205 W.Va. 216, 517 S.E.2d 313 (1999)." Syllabus point 2, *Horace Mann Insurance Co. v. Adkins,* 215 W.Va. 297, 599 S.E.2d 720 (2004).

Syl. Pt. 3, in part, *Certain Underwriters at Lloyd's, London v. Pinnoak Resources, LLC,* 223 W.Va. 336, 674 S.E.2d 197 (2008). Moreover, " '[a] circuit court's entry of a declaratory judgment is reviewed *de novo.*' Syl. Pt. 3, *Cox v. Amick,* 195 W.Va. 608, 612, 466 S.E.2d 459, 463 (1995)." Syl. Pt. 1, *City of Bridgeport v. Matheny,* 223 W.Va. 445, 675 S.E.2d 921 (2009). Under this plenary standard, we turn to the parties' arguments.

## III. DISCUSSION

### A.

We first address the validity of State Farm's non-duplication of benefits provision as viewed against the so-called "no sums payable" provision of W. Va.Code § 33–6–31(b). Petitioner contends that the non-duplication provision simply prevents a double recovery by a claimant for sums already received in payment of damages incurred and is the type of "offset" against damages sanctioned by this Court in *State Automobile Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990). Respondents contend that the plain language of the statute precludes such reduction and that this Court struck down a similar attempt at reduction of underinsured motorist benefits in *Cunning-*

---

2. The letter appears to be a "form" letter outlining the medical payments coverage and how it operates. The letter also reiterates the reimbursement provision of the policy.

3. As to the reimbursement language, the circuit court also found that it violated the doctrine of reasonable expectations. The circuit court fur-

ther made tangential findings about use of the reimbursement provision as constituting an attempt to avoid paying pro rata attorney fees and costs and unnecessarily increasing the "medical debt" of plaintiffs because amounts paid under medical payments coverage are not negotiated down by the insurer.

*ham v. Hill,* 226 W.Va. 180, 698 S.E.2d 944 (2010). Therefore, a close examination of both cases is warranted.

■ In *Youler,* this Court was presented with a certified question inquiring whether an insurer may "reduce or offset its policy *coverage limitations* for underinsured motorist coverage by the amount recovered by the insured from a Defendant's liability insurance carrier[.]" 183 W.Va. at 566 n. 9, 396 S.E.2d at 747 n. 9 (emphasis added). This Court held that amounts recovered from a tortfeasor may not be offset from an insured's underinsured motorist *coverage*— thereby reducing the coverage available for payment of damages—but should be offset from the total amount of *damages* payable pursuant to the underinsured motorist coverage. *Id.* at 570, 396 S.E.2d at 751. This Court expressly authorized a formula whereby amounts recovered from the tortfeasor may be deducted from the total damages sustained by an insured for purposes of determining the underinsured motorists benefits to which the insured is entitled in order to prevent double recovery:

> [T]he amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person, and the insurer providing underinsured motorist coverage is liable for the remainder of the damages, but not to exceed the coverage limits.

Syl. Pt. 4, in part, *id.*

In so holding, this Court considered the "no sums payable" language and found that the addition of this language by the Legislature was "only a clarification of the legislature's original intent to preclude the type of setoff proposed by State Auto here." *Id.* at 569, 396 S.E.2d at 750.[4] The "type of offset proposed by State Auto" was a reduction of the underinsured *"coverage limitations"* available by the amount received by the insured in settlement with the liability carrier. *Id.* at 566, n. 9, 396 S.E.2d at 747, n. 9 (emphasis added). In approving a set-off of sums already received by the insured against the insured's *damages,* we recognized that "[t]he goal of providing full indemnification to individuals injured by the negligent operation of motor vehicles by inadequately insured motorists 'would be well served by employing setoffs so [that] they apply to avoid the duplication of benefits, rather than the reduction of liability for the insurer[.]' " *Id.* at 570, 396 S.E.2d at 751.

In *Cunningham,* the insured had purchased two underinsured motorist policies, both of which contained language that limited recovery under the policies to the "highest liability limits available when more than one policy provided underinsured motorist coverage." 226 W.Va. at 182, 698 S.E.2d at 946. One policy had limits of $100,000/$300,000; the other had limits of $50,000/$100,000. *Id.* Based on this language, the insurers attempted to limit the available underinsured coverage to $100,000, rather than the cumulative $150,000, and paid the insured pro-rata amounts commensurate with that limitation. *Id.* at 183, 698 S.E.2d at 947. This Court held that such provision violated the "no sums payable" language in W. Va.Code § 33–6–31(b) and that "[t]he act of reducing one underinsured motorist policy by another thwarts the statutorily enunciated public policy of full indemnification." *Id.* at 186, 698 S.E.2d at 950. The Court found that an underinsurer may not reduce the "monetary extent of its *coverage* " in this fashion without violating the "no sums payable" and noting that the Cunninghams "paid two full premiums for two separate underinsured motorist policies" and should therefore receive the benefit of both policies to ensure full compensation. *Id.* at 186–87, 698 S.E.2d at 950–51 (emphasis added).

We find that the application of the non-duplication provision in State Farm's policy

---

4. The "no sums payable" language was added by the Legislature in 1988, subsequent to the accident at issue in *Youler.* As a result, State Auto contended that the addition of such language constituted a "new" prohibition on offsets against underinsured motorist coverage limits that was not applicable to the Youlers. As discussed *infra,* we found that both the statute in its original form and its subsequent amendments prohibit only reduction of coverage available to an insured. As such, our decision in *Youler* was not dictated by the absence or addition of the "no sums payable" language; therefore, it is not distinguishable on those grounds.

is not an attempt to reduce the "monetary extent of its coverage," as in *Cunningham,* but rather prevents double recovery of damages, and is therefore governed by our analysis in *Youler.* In *Youler,* this Court emphasized the distinction between policy language which serves to erode coverage and language which permits an offset against an insured's damages, to prevent double recovery. We found that this distinction was embodied in the policy language itself, which required that the tortfeasor's liability limits be deducted from damages and not coverage:

> In the present case the Youlers' automobile insurance policies provide that automobile liability insurance coverage of a tortfeasor is to reduce "[a]ny amounts otherwise payable for *damages* under this [uninsured/underinsured motorist coverage] endorsement[.]" (emphasis added). This policy language clearly requires the tortfeasor's liability insurance coverage to be set off against damages, not against the underinsured motorist coverage limits.

*Id.* at 569, 396 S.E.2d at 750. In footnote fourteen, we noted, in contrast, that "[a]ny 'setoff' language ... which purportedly reduces the underinsured motorist coverage limits by the tortfeasor's automobile liability insurance coverage would be void as repugnant to the public policy of full indemnification set forth in *W. Va.Code,* 33–6–31(b), as amended." *Id.* at 569 n. 14, 396 S.E.2d at 750 n. 14. Likewise, the language of State Farm's non-duplication provision states that the reduction for amounts paid under the medical payments coverage is to be taken from "the amount of all *damages* resulting from that bodily injury[.]" (emphasis added). That is precisely the manner in which the State Farm adjuster indicated it was being applied; respondents do not allege that the adjuster was utilizing the non-duplication provision to reduce the amount of *coverage* which was available for compensation of Mrs. Schatken's claim. Rather, after calculation of the gross settlement value of Mrs. Schatken's injury claim, reductions were made for the tortfeasor's liability limits and the medical payments coverage, to achieve a "net" settlement value upon which the offers were being made.

Despite the clear distinction this Court has made between attempts to reduce coverage and offsets against damages to prevent double recovery, respondents contend that they paid two separate premiums for two separate coverages—medical payments and underinsured motorists—and that application of the non-duplication provision deprives them of the use and benefit of both coverages for which they paid. In support, respondents cite to our statement in *Cunningham* that the insureds therein "paid two full premiums for two separate underinsured motorist policies" and therefore "are entitled to be fully indemnified." 226 W.Va. at 187, 698 S.E.2d at 951. Petitioner counters that, in fact, full limits of both coverages are available *if the insureds' damages warrant* and that therefore, the amount of *coverage* is never reduced under any circumstances.

With respect to respondents' argument, we first note that medical payments coverage is not an additional layer of underinsured coverage deserving of like treatment as the policies in *Cunningham.* Medical payments coverage serves a distinctly different purpose. As this Court explained in *Ferrell v. Nationwide Mut. Ins. Co.,* 217 W.Va. 243, 249, 617 S.E.2d 790, 796 (2005), medical payments coverage

> permits the insured to gain speedy reimbursement for medical expenses incurred as a result of a collision without regard to the insured's fault. It also assures coverage when the insured is involved in an accident with an uninsured or underinsured driver. And in situations where both parties to an accident are insured by the same insurer, it sometimes eliminates the need for costly litigation to determine fault.

The Schatkens realized the benefit of their medical payments coverage in the prompt and timely payment of $5,000.00 of Jill Schatken's medical bills. In fact, this coverage, along with the tortfeasor's limits, resulted in full payment of all of her out-of-pocket expenses, leaving only her general damages and any future expenses to be compensated. It is for payment of these remaining *uncompensated* damages that State Farm's settlement offers were made.

As to State Farm's contention that, if damages warrant, the full limits of both coverages are available, this operation is clearly borne out by the language of the provision itself. The non-duplication provision is preceded by the general insuring language of the underinsured motorist coverage and is contained within a description of the "Limits" of the coverage. The policy then further explains that the most State Farm will pay is the lesser of: 1) the "limits shown under 'each Person'" or 2) "the amount of all damages resulting from that bodily injury, reduced by . . . any damages that have already been paid or that are payable as expenses under Medical Payments Coverage of this policy[.]" As such, only if an insured's damages are less than policy limits is the non-duplication provision even implicated. If the insured's damages are greater than the underinsured motorist limits, there is no concern of double recovery because the insured is not being made whole in any event. In that situation, limits are paid irrespective of the amounts paid under the Medical Payments Coverage and the insured has received the full limits of each coverage. *Accord Welborn v. State Farm Mut. Auto. Ins. Co.*, 480 F.3d 685, 689 (5th Cir.2007)(observing that similar provision "would not act to deprive an insured who had damages greater than the UM limits of full coverage").

■■ If, however, the insured's damages are less than limits, the reduction is undertaken to ensure that the underinsured motorist coverage is not used to duplicate benefits and in no way undermines the "preeminent public policy of this state . . . that the injured person be *fully compensated* for his or her damages[.]" *Youler*, 183 W.Va. at 564, 396 S.E.2d at 745 (emphasis in original). The mere fact that an insured has a variety of coverages available to compensate him or her does not increase his or her damages. It is only when, by operation of a policy provision, an insured's available coverage from which his damages are to be compensated becomes compromised, resulting in less than "full compensation" that the provision runs afoul of W. Va.Code § 33–6–31(b). This Court has recognized that insurers providing underinsured motorist coverage are "liable for the *excess or uncompensated* damages up to the underinsured motorist coverage limits." *Youler*, 183 W.Va. at 568, 396 S.E.2d at 749 (emphasis added). Quite simply, the damages covered by the tortfeasor's liability policy and the medical payments coverage are not "uncompensated" for purposes of underinsured motorist coverage. It is the "excess or uncompensated" net damages that the underinsured motorist coverage is available to compensate.[5] Many other courts have

---

**5.** Moreover, we find that this rationale does not run afoul of the collateral source rule, as suggested by respondents. In Syllabus Point 7 of *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981), this Court stated that "[t]he collateral source rule normally operates to preclude the offsetting of payments made by health and accident insurance companies or other collateral sources as against the damages claimed by the injured party." Its inapplicability to the issue *sub judice* is demonstrated in our discussion of the rule's purpose:

"The collateral source rule was established to prevent *the defendant* from taking advantage of payments received by the plaintiff as a result of his own contractual arrangements entirely independent of the defendant. Part of the rationale for this rule is that the *party at fault* should not be able to minimize his damages by offsetting payments received by the injured party through his own independent arrangements."

*Id.* at 787, 280 S.E.2d at 590 (emphasis added); *see also Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 446, 307 S.E.2d 603, 615 (1983)(holding that "the collateral source rule excludes pay-

ments from other sources to plaintiffs from being used to reduce damage awards imposed upon *culpable defendants*" (emphasis added)). As well-stated by the Supreme Court of Wisconsin:

As a rule of damages, "the collateral source rule denies a tortfeasor credit for payments or benefits conferred upon the plaintiff by any person other than the tortfeasor." In other words, "[t]he tortfeasor who is legally responsible for causing injury is not relieved of his obligation to the victim simply because the victim had the foresight to arrange, or good fortune to receive, benefits from a collateral source for injuries and expenses."

*Leitinger v. DBart, Inc.*, 302 Wis.2d 110, 736 N.W.2d 1, 8 (2007) (citing *Lagerstrom v. Myrtle-Werth Hosp.*, 285 Wis.2d 1, 700 N.W.2d 201 (2005) and *Ellsworth v. Schelbrock*, 235 Wis.2d 678, 611 N.W.2d 764 (2000)). Quite simply, State Farm is not the "party at fault"; rather, it is an entity with whom respondents have contracted to provide a source of recovery for damages in excess of what the party at fault has available to pay. *Compare Johnson by Johnson v. General Motors Corp.*, 190 W.Va. 236, 438 S.E.2d 28 (1993)(holding that collateral source rules

also concluded that uninsured and/or underinsured motorist coverage may be properly offset by medical payments to prevent a double recovery. *See Ostransky v. State Farm Ins. Co.,* 252 Neb. 833, 566 N.W.2d 399 (1997); *Mid–Century Ins. Co. of Texas v. Kidd,* 997 S.W.2d 265 (Tex.1999); *Ellison v. California State Auto. Ass'n,* 106 Nev. 601, 797 P.2d 975 (1990); *Wing,* 17 P.3d 783 (Alaska 2001); *Rowzie,* 556 F.3d 165 (4th Cir.2009)(interpreting South Carolina statute); *Welborn,* 480 F.3d 685 (5th Cir.2007)(interpreting Mississippi law); *Miera v. Dairyland Ins. Co.,* 143 F.3d 1337 (10th Cir.1998) (applying New Mexico law); *Standard Mut. Ins. Co. v. Pleasants,* 627 N.E.2d 1327 (Ind.App.1994); *Barnes v. Allstate Ins. Co.,* 608 So.2d 1045 (La.App.1992); *Taxter v. Safeco Insurance Co. of America,* 44 Wash.App. 121, 721 P.2d 972 (1986); *Yates v. Dean,* 244 Ga.App. 333, 535 S.E.2d 335 (2000); *Kessler v. Shimp,* 181 N.C.App. 753, 640 S.E.2d 822 (2007).

■ Finally, to interpret W. Va.Code § 33–6–31(b) as the circuit court did and as respondents urge would be squarely contradictory to *Youler,* inasmuch as the plain language of W. Va.Code § 33–6–31(b) would appear to likewise preclude offset of the tortfeasor's liability limits, which this Court has deemed proper. The operative language provides that "[n]o sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy *or any other policy.*" (emphasis added). Certainly a tortfeasor's liability policy would qualify as "any other policy." Such an interpretation does not ensure "full

indemnification"; rather, it expressly sanctions a double recovery, which this Court has long found violative of public policy: "It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury." Syl. Pt. 7, in part, *Harless v. First Nat'l Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982); *see McDavid v. U.S.,* 213 W.Va. 592, 601, 584 S.E.2d 226, 235 (2003)(noting that it is "axiomatic" that only one recovery is permitted for each loss); *see also McCormick v. Allstate Ins. Co.,* 202 W.Va. 535, 505 S.E.2d 454 (1998); *Smithson v. United States Fid. & Guar. Co.,* 186 W.Va. 195, 411 S.E.2d 850 (1991); *Meade v. Slonaker,* 183 W.Va. 66, 394 S.E.2d 50 (1990).

■ Therefore, we hold that a "non-duplication" of benefits provision in an underinsured motorist policy which permits an insurer to reduce an insured's damages by amounts received under medical payments coverage does not violate the "no sums payable" language of W. Va.Code § 33–6–31(b), insofar as it does not serve to reduce the underinsured motorist coverage available under the insured's policy. As such, we find that the circuit court erred in granting partial summary judgment to respondents as to the non-duplication provision.

**B.**

■ We turn next to the circuit court's grant of partial summary judgment to respondents on the basis that the reimbursement provision in State Farm's policy like-

bars setoff of uninsured and underinsured motorists benefits as against a judgment against a *tortfeasor*). As such, respondents' attempt to wield the rule to defeat State Farm's non-duplication provision fails. *See Wing v. GEICO Ins. Co.,* 17 P.3d 783 (Alaska 2001); *see also Rowzie v. Allstate Ins. Co.,* 556 F.3d 165, 169 (4th Cir.2009)(holding that underinsured carrier is "not the legal equivalent of the at-fault, underinsured driver" and therefore setoff prohibition applied only to tortfeasor).

We recognize, however, that while the collateral source rule is a substantive rule of damages, it is likewise a rule of evidence, suggesting that its primary operation is in the context of a jury trial. *See Daniel B. by Richard B. v. Ackerman,* 190 W.Va. 1, 4, 435 S.E.2d 1, 4 (1993) (holding that

"the rule has its foundations in the concern that a jury may inaccurately or unfairly determine the amount of *damages* to which a plaintiff is entitled."); *see also Fitzgerald v. Expressway Sewerage Constr., Inc.,* 177 F.3d 71, 73 (1st Cir.1999) (noting that "[i]mplementation of the [collateral source] rule necessarily gives rise to an evidentiary analogue. This analogue customarily bars the introduction of proof of collateral source payments made to a plaintiff." (citations omitted)). However, as to our holding herein, we find simply that the collateral source rule does not serve to invalidate the non-duplication provision at issue and do not address the rule's evidentiary implications in the event of a jury trial in this or other similarly situated cases, as such matters are not properly before this Court.

wise violates W. Va.Code § 33–6–31(b). Because we find that the reimbursement provision is not ripe for adjudication in this matter, the circuit court's award of summary judgment was erroneous and we, therefore, decline to address the validity of the challenged provision.

As set forth hereinabove, the reimbursement provision provides that upon payment under the State Farm policy and recovery by the insured from another party, the insured is obliged to reimburse State Farm to the extent of its payment. Petitioner argues that it did not assert its right of reimbursement in this case; moreover, it argues that this provision was never alleged in respondents' complaint for declaratory judgment. As such, the issue is a "mere contingency" upon which neither the circuit court nor this Court may render judgment and that to do so would be tantamount to an advisory opinion.

 Respondents counter that by mentioning the reimbursement provision in its response brief, State Farm has injected the provision into the case, making it justiciable.[6] Respondents further point to the circuit court's finding that the August 20, 2009, letter from State Farm to respondents' counsel, reserving the right to reimbursement evidenced State Farm's intention to exercise its right to reimbursement. Respondents contend that declaratory judgment has specifically been endorsed for use in situations such as this to clarify "policy coverage dis-

putes so that the parties may know in advance of the personal injury trial whether coverage exists." *Christian v. Sizemore*, 181 W.Va. 628, 632, 383 S.E.2d 810, 814 (1989).

 In general, this Court has held that

"[c]ourts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken." *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W.Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943).

Syl. Pt. 2, *Harshbarger v. Gainer*, 184 W.Va. 656, 403 S.E.2d 399 (1991). Moreover,

we have traditionally held that "courts will not ... adjudicate rights which are merely contingent or dependent upon contingent events, as distinguished from actual controversies." Likewise, "courts [will not] resolve mere academic disputes or moot questions or render mere advisory opinions which are unrelated to actual controversies."

Indeed, a matter must be ripe for consideration before the court may review it. Courts must be cautious not to issue advisory opinions.

*Zaleski v. West Virginia Mut. Ins. Co.*, 224 W.Va. 544, 552, 687 S.E.2d 123, 131 (2009) (citations omitted).

---

6. In addition, respondents make much of State Farm's attempt to make clear that it did not intend to exercise its right of reimbursement in this case as gamesmanship and an attempt to "moot" the issue; respondents urge that State Farm's "withdrawal" of their right of reimbursement falls within one of two exceptions to the mootness doctrine. The first, which this Court has recognized, states that a case is not moot " 'even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.' " Syl. Pt. 1, *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984). They further argue there is a great "public interest" in deciding the issue, citing *Israel by Israel v. West Virginia Secondary Schools Activities Com'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989). Secondly, respondents urge this Court to adopt the "vol-

untary cessation" exception to mootness to prevent State Farm from depriving the Court of the opportunity to rule on the validity of this provision, only to use it against other insureds in other cases.

Of course these exceptions are only applicable to the mootness doctrine, which presupposes that the reimbursement provision was at some point at issue and then "mooted" by the actions of State Farm. Respondents fail to appreciate that this case presents an issue of "ripeness," rather than "mootness": "As compared to mootness, which asks whether there is anything left for the court to do, ripeness asks whether there yet is any need for the court to act." 13B Fed. Prac. & Proc. Juris. § 3532.1 (3d ed.). Inasmuch as we find that the reimbursement provision was never at issue and therefore not "ripe," as discussed *infra*, the mootness doctrine and its exceptions are inapplicable. As such, respondents' arguments in this regard are without merit.

With respect to declaratory judgments, the Uniform Declaratory Judgments Act provides that "[a]ny person … whose rights, status or other legal relations are affected by a statute … may have determined any question of construction or validity arising under the … statute … and obtain a declaration of rights, status or other legal relations thereunder." W. Va.Code § 55–13–2 (Repl. Vol. 2008). However, this Court has held that "[t]he rights, status, and legal relations of parties to a proceeding under the Uniform Declaratory Judgments Act depend upon facts existing at the time the proceeding is commenced. *Future and contingent events will not be considered.*" Syl. Pt. 2, *Town of South Charleston v. Board of Ed. of Kanawha County*, 132 W.Va. 77, 50 S.E.2d 880 (1948)(emphasis added).

It is clear that the reimbursement provision was not properly before the circuit court. First, the provision initially appeared as a statement in State Farm's brief in response to respondents' motion for summary judgment as to the non-duplication provision. It was not part of the original complaint for declaratory relief, nor was there a motion to amend to add the provision. Although it is unclear from the context what point State Farm sought to make by referencing the reimbursement language in its brief, it is apparent that its passing mention was insufficient to demonstrate an affirmative intention to seek reimbursement. *Cf. Marcus v. Holley*, 217 W.Va. 508, 518, 618 S.E.2d 517, 527 (2005) (finding that a claim raised for the first time in response to a motion for summary judgment does not serve to amend the complaint); *see also Morgan Distributing Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992 (8th Cir.1989)(same).

Secondly, the circuit court's reliance on the August 20, 2009, letter sent to respondents' counsel to justify its position that State Farm had affirmatively invoked the reimbursement provision is misplaced. Even a cursory review of the letter reveals that the letter was sent by State Farm in regard to *Steven* Schatken's bodily injury claim and the availability of medical payments coverage for such claim.[7] Steven Schatken asserts no injury claim in the underlying action, much less makes any allegations with regard to the validity of the reimbursement provision as pertains to him. Obviously then, State Farm's notice of its right of reimbursement as to his claim is of no moment with regard to whether State Farm asserted its right of reimbursement as to Jill Schatken's claim.

Moreover, in further defense of the non-justiciable nature of the reimbursement provision at issue, petitioner represents that not only does it not intend to invoke reimbursement in this case, but that reimbursement does not work "in tandem" with the non-duplication provision. That is, in the context of an underinsured motorist claim, once State Farm has deducted sums paid under medical payments pursuant to the non-duplication provision, it does not then seek reimbursement of those same sums from plaintiff. State Farm highlights that the reimbursement provision is operable only in the event of a settlement with a third party. Whether this is actually the case or not, this contention simply highlights the deficiency in the ripeness of this issue inasmuch as the record below does not reflect specific circumstances under which the reimbursement provision is invoked for this Court to review, since there is no evidence it has been invoked. To assess the validity of this provision in a vacuum, without a specific factual background against which to review it, would constitute an impermissible advisory opinion.

Finally, respondents contend that the reimbursement provision is "at issue" because their bad faith claim is premised upon it. However, the complaint belies this contention as the only bad faith allegations contained therein pertain to the non-duplication provision and general "low-balling" allegations. Therefore, this argument fails.

---

7. The letter is addressed to respondents' counsel and in its subject line identifies the letter as being in regard to "Client: Steven N. Schatken." A post-script to the letter further confirms the subject of the letter by stating, "Please be advised that to date we have not received or processed any medical bills for Steven." We are puzzled, however, as to why State Farm failed to bring this discrepancy regarding the identity of the claimant to whom the letter was directed to the attention of the circuit court or this Court.

Accordingly, we find that the circuit court's consideration of and entry of summary judgment on the reimbursement provision violates our "long-standing principles of ripeness and the requirement that an actual case in controversy exist before a matter can be reviewed" and was therefore, erroneous. *Zaleski,* 224 W.Va. at 552, 687 S.E.2d at 131.

## IV. CONCLUSION

For the reasons set forth above, the July 7, 2011, order of the Circuit Court of Jefferson County, is reversed.

Reversed.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.

Judge KEADLE sitting by temporary assignment.

Chief Justice KETCHUM and Judge KEADLE dissent and reserve the right to file dissenting opinions.

KETCHUM, Chief Justice, with whom Judge KEADLE joins, dissenting:

The Plaintiffs purchased and paid a premium for medical payments insurance coverage from State Farm. They also purchased and paid a separate premium for underinsured motorist coverage. These two coverages were contained in their State Farm automobile insurance policy. The majority opinion holds that State Farm can reduce the Plaintiffs' personal injury damages payable under the underinsured coverage by the amount they received under the medical payments coverage.

This reduction by the majority opinion is contrary to the plain language of West Virginia's underinsured motorist statute. It states, "No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy." *W.Va.Code,* 33–6–31(b) [1998].

I respectfully dissent to the majority's opinion. I am authorized to state that Judge Keadle joins in this dissent.