# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Standard Oil Company, Inc.,**
**Plaintiff below, Petitioner**

**vs)    No. 15-0655** (Wetzel County 14-C-39)

**Consolidation Coal Company,**
**Defendant below, Respondent**

**FILED**

**October 17, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Standard Oil Company, Inc., by counsel Kenneth J. Witzel, appeals two orders of the Circuit Court of Wetzel County entered June 5, 2015. One order granted summary judgment to the respondent, the other denied the petitioner permission to amend its complaint. Respondent Consolidation Coal Company, by counsel Charles F. Johns and Christopher A. Lauderman, filed a response, and petitioner filed a reply.

The Court has considered the parties' briefs, the record on appeal, and the oral arguments of the parties. Upon consideration of the standards of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

This declaratory judgment action concerns a 1998 written option agreement between the petitioner, Standard Oil Company, Inc. ("Standard Oil"), and the respondent, Consolidated Coal Company ("Consol"). Standard Oil owns and operates oil, gas, and coalbed methane wells across north central West Virginia, including wells upon three leaseholds in Wetzel County. Consol operates underground coal mines in the same area.

Sometime in the early-to-mid 1990s, Consol showed Standard Oil areas where future underground mining operations were to be conducted. In response, Standard Oil sought out the owners of the oil, gas and coalbed methane wells in those areas and bought the wells. When Consol's underground mining operations later reached a particular well,

1

Consol would buy the well from Standard Oil. Consol would then plug the well and mine the coal.[1]

It appears that Consol later sought to standardize its well-purchasing procedure with Standard Oil. After negotiations, on September 30, 1998, Standard Oil and Consol signed a written option agreement granting Consol the "right, option and privilege to purchase, at any time and from time to time . . . any oil well, gas well, oil and gas well, coalbed methane well and any other well" owned by Standard Oil. Consol agreed to pay $25,000.00 to Standard Oil for each well, and agreed to acquire a well only "for the purpose of plugging in connection with projected coal mining activities."

The 1998 written option agreement was for a term of 90 years. The stated consideration for the contract was $10.00. The then-owner of Standard Oil, Joe O'Ferrell, estimated the company owned 360 wells that were affected by the option agreement, and therefore he anticipated $9,000,000.00 in future earnings. Mr. O'Ferrell sold his interest in Standard Oil around 2010.

In a November 2014 deposition, Mr. O'Ferrell testified that Consol initially complied with the option agreement after September 1998 and bought and plugged five of Standard Oil's wells. Sometime thereafter (and certainly by 2002), Mr. O'Ferrell discovered that Consol had taken and plugged an unknown number of Standard Oil's wells without paying, as required by the 1998 option agreement. When Mr. O'Ferrell asked Consol for payment, Consol said it wouldn't because "it's not in the budget this year."

Mr. O'Ferrell testified that he had other deals in the works with Consol during the same time period. For instance, Mr. O'Ferrell sought to earn a $20,000,000.00 fee by closing a sales deal between a Canadian company and Consol. Mr. O'Ferrell also had a deal to sell natural gas to Consol to operate a plant to dry coal. Mr. O'Ferrell therefore made a conscious decision, on behalf of Standard Oil, not to sue Consol for breach of contract. As he testified:

> A [by Mr. O'Ferrell]: . . . [I]n Hughy Run, for example, I bought those wells and had to spend 60,000 bucks on them to get those in compliance. Consol came through and plugged them all. They told me they weren't coming down that valley for 17 years . . .
>
> Q. You put those wells in compliance?

---

[1] Standard Oil's then-owner testified that he was "almost an advance man for Consol." For example, he testified Standard Oil bought "all of J&H wells, a hundred and some for $12,000" and then sold some of those wells, one-by-one, to Consol for an "average 60 to 100,000 bucks per well."

A.  Yes, I did.

Q.  And what happened to those wells?

A.  Consol came through and plugged them all, all but two.

Q.  And did not pay you?

A.  No.  Gave me pipe out of some of them.

Q.  Was that after you signed this [1998] deal?

A.  Yeah, sure.

Q.  Did you ever consider bringing a claim against them for breach of contract?

A.  Yes, but like I told you, I have other deals with them.  [The Canadian company] is going to pay me $20 million for [Consol's] gob pile.  I can't kill that goose. . . .

Q.  . . . [T]he reason you didn't do anything to rock the boat, so to speak, was because they had other things going on with you that you felt were worth more in the long run than messing up the relationship over this?

A.  Right.

After Mr. O'Ferrell sold Standard Oil in 2010, the company began exploring the use of expensive new technologies – such as horizontally drilling the Marcellus and Utica shale formations located beneath the coal seams – to extract oil and gas from its wells.  To use these technologies, Standard Oil attempted to sell three oil and gas leases in Wetzel County.  However, Standard Oil could not complete the sale because of the possibility that Consol might exercise the option to buy the newly-drilled well for $25,000.00 and plug it.  In September 2013, Standard Oil negotiated a letter agreement with Consol that would allow the development of the shale formations beneath Consol's mines without interference by Consol; however, that agreement was never signed.

In April 2014, Standard Oil filed the instant action against Consol and challenged the validity of the 1998 written option agreement.  The complaint contained three counts.  Count I sought a declaration that the option agreement was void for inadequate consideration, and alleged that the $10.00 consideration for the deal was insufficient in light of the value of the oil and gas in the Marcellus and Utica formations.  Count II sought a declaration that the option agreement was void because the description of the wells

3

covered by the agreement was ambiguous. And Count III sought a declaration that the 90-year term for the option agreement violated the rule against perpetuities.

The parties conducted discovery, including the taking of Mr. O'Ferrell's deposition in November 2014.

In January 2015, Standard Oil moved to amend its complaint based upon facts "discovered" during Mr. O'Ferrell's deposition. Standard Oil's proposed amendment added a count for "Guilty of First Breach," alleging that Consol had taken a number of Standard Oil's wells under the authority of the option agreement without paying consideration. Standard Oil alleged that, because Consol had caused a "substantial first breach" of the 1998 option agreement, Consol's action "renders further attempts to enforce said contract unenforceable."

At the close of discovery, Consol filed a motion for summary judgment. Consol also asked the circuit court to refuse Standard Oil permission to amend the complaint.

On June 5, 2015, the circuit court entered two orders in Consol's favor. The first order granted Consol's motion for summary judgment, and the second denied Standard Oil's motion to amend its complaint. Regarding summary judgment, the circuit court first concluded that the $10.00 exchanged by the parties for the option agreement (thereafter allowing Consol the option to buy each well for $25,000.00) was sufficient consideration when the agreement was reached in 1998. Second, the circuit court found the option agreement was not unduly vague and contained enough information to identify the wells affected by the agreement. Finally, the circuit court noted that the Uniform Statutory Rule Against Perpetuities (adopted by the Legislature in 1992) provides that a non-vested property interest is valid if the "interest either vests or terminates within ninety years after its creation."[2] Because the option agreement provided that it "shall be effective for a term of ninety (90) years," the circuit court found the agreement did not violate the rule against perpetuities. The circuit court therefore declined to declare that the 1998 option agreement was invalid.

In denying Standard Oil's 2015 motion to amend the complaint, the circuit court noted the prior owner of Standard Oil, Mr. O'Ferrell, knew Consol was breaching the option agreement by 2002 but "made a strategic and conscious choice, on behalf of [Standard Oil,] to ignore any alleged breaching conduct" by Consol. Because there is a ten-year statute of limitation for claims of breach of a written contract,[3] the circuit court

---

[2] W.Va. Code § 36-1A-1(a)(2) [1992].

[3] W.Va. Code § 55-2-6 [1923] ("Every action to recover money, which is founded upon . . . any contract . . . shall be brought within the following number of years next after the right to bring the same shall have accrued, that is to say: . . . if it be . . . upon a contract in writing, signed by the party to be charged thereby, or by his agent, but not under seal, within ten years[.]").

concluded Standard Oil's breach of contract claim would be dilatory and barred by the statute of limitation. The circuit court therefore declined to allow Standard Oil to amend its complaint.

Standard Oil now appeals both of the circuit court's June 5, 2015, orders.

Standard Oil first argues that the circuit court erred in granting summary judgment. This Court reviews a circuit court's entry of a summary judgment or a declaratory judgment *de novo*. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); Syllabus Point 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995) ("A circuit court's entry of a declaratory judgment is reviewed *de novo*.").

Standard Oil contends that its initial declaratory judgment complaint asked for two classes of relief: a broad declaration that the entire 1998 option agreement was null and void, and a limited declaration regarding which specific wells were or were not encompassed by the agreement. Additionally, Standard Oil contends its complaint asked whether a future horizontal well, drilled far below a Consol coal seam, is subject to the option agreement, particularly where the vertical portion of the future well is located on land not owned or leased by Standard Oil. Standard Oil asserts the circuit court erred by granting summary judgment and entirely dismissing its declaratory judgment complaint on the broad grounds without addressing Standard Oil's request for limited declaratory relief.

We have examined Standard Oil's declaratory judgment complaint and find no error in the circuit court's summary judgment order. Standard Oil's complaint specifically asked for the option agreement to be declared void for three reasons: (1) inadequate consideration; (2) vagueness; and (3) violating the rule against perpetuities. Nothing in the declaratory judgment complaint indicates that Standard Oil was seeking a declaration of which specific wells were, or were not, encompassed by the 1998 option agreement. Additionally, nothing in the declaratory judgment complaint asks the circuit court for a ruling on the effect of the 1998 option agreement upon future, horizontally-drilled wells.

It is a long-standing rule that a circuit court cannot grant declaratory relief if the pleadings do not place the alleged controversy before the court. "If the pleadings and proof disclose that the subject matter of the controversy is not before the court, there is no jurisdiction to grant relief under the Uniform Declaratory Judgments Act." Syllabus Point 1, *Town of S. Charleston v. Bd. of Ed. of Kanawha Cty.*, 132 W.Va. 77, 50 S.E.2d 880 (1948). *See State Farm Mut. Auto. Ins. Co. v. Schatken*, 230 W.Va. 201, 211, 737 S.E.2d 229, 239 (2012) (circuit court could not issue declaratory judgment construing contract provision that "was not part of the original complaint for declaratory relief, nor was there a motion to amend to add the provision."); *Black v. St. Joseph's Hosp. of Buckhannon, Inc.*, 234 W.Va. 175, 181-82, 764 S.E.2d 335, 341-42 (2014) (circuit court erred in considering validity of a contract, when question was not contained in declaratory judgment complaint).

5

*See also*, *Shobe v. Latimer*, 162 W.Va. 779, 784, 253 S.E.2d 54, 58 (1979) ("It is a primary requirement of the Declaratory Judgments Act that plaintiffs demonstrate they have standing to obtain the relief requested.").

Standard Oil's original declaratory judgment complaint failed to specifically ask for a ruling on which wells were or were not within the scope of the 1998 option agreement, or for a ruling on the effect of the agreement upon certain types of horizontally-drilled wells. We therefore find no error in the circuit court's summary judgment order that did not rule on those questions outside of the declaratory judgment complaint.

Standard Oil's second argument concerns the circuit court's order refusing to allow an amendment to its declaratory judgment complaint. A circuit court's order refusing to grant leave to amend a pleading is reviewed for an abuse of the trial court's discretion. Syllabus Point 1, *Nellas v. Loucas*, 156 W.Va. 77, 191 S.E.2d 160 (1972) ("A motion to amend a pleading is addressed to the sound discretion of the trial court and such discretion will not be disturbed on appeal unless there is a showing of abuse of discretion.").

Rule 15(a) of the West Virginia Rules of Civil Procedure states that leave to amend a complaint should be "freely given when justice so requires." Standard Oil argues that Rule 15, by its own terms, "is to be construed liberally in order to promote the consideration of claims on their merits." *Brooks v. Isinghood*, 213 W.Va. 675, 684, 584 S.E.2d 531, 540 (2003). "The goal behind Rule 15, as with all the Rules of Civil Procedure, is to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties." *Brooks*, 213 W.Va. at 684, 584 S.E.2d at 540 (quoting *Doyle v. Frost*, 49 S.W.3d 853, 856 (Tenn. 2001)).

Standard Oil alleges that in the November 2014 deposition of its former owner, Mr. O'Ferrell, it discovered that Consol breached the option agreement prior to 2002. Standard Oil contends that its proposed amendment was to add a count for "first breach" to its declaratory judgment complaint. The gist of the doctrine of "first breach" is that the "party who commits the first breach of a contract is not entitled to enforce it, or to maintain an action thereon, against the other party for his subsequent failure to perform." *Hurley v. Bennett*, 163 Va. 241, 253, 176 S.E. 171, 175 (1934). *See also Blue v. Hazel-Atlas Glass Co.*, 106 W.Va. 642, 650, 147 S.E. 22, 26 (1929). Standard Oil contends it is neither seeking to enforce the option agreement nor to obtain damages from Consol for its alleged *past* breach. Instead, it claims it is seeking a judicial declaration that Consol cannot enforce the option agreement because any *future* claims that Standard Oil breached the agreement would be subject to the defense of first breach.

The facts in the appendix record indicate that Mr. O'Ferrell (who testified he was "an officer and director and owner" of Standard Oil from well before 1998 until 2010) knew that Consol breached the 1998 option agreement, and knew Consol was taking Standard Oil's wells without payment. Mr. O'Ferrell possessed that knowledge by 2002.

Despite this knowledge, Mr. O'Ferrell testified he made a deliberate choice not to pursue a breach of contract claim against Consol, for fear of disrupting other business deals. "Generally, the knowledge of a corporate officer within the scope of his employment is the knowledge of the corporation." *People v. Parker*, 235 Cal.App.2d 86, 93, 44 Cal. Rptr. 900, 904 (1965). Accord *City Bank of Wheeling v. Bryan*, 72 W.Va. 29, 36, 78 S.E. 400, 403 (1913) ("The officers and directors of a bank are its agents, and, as a general rule, knowledge acquired by an agent in respect to matters pertaining to the agency is attributable to his principal."). Hence, Mr. O'Ferrell's knowledge and actions became the knowledge and actions of Standard Oil, meaning Standard Oil knew of Consol's breach of the option agreement no later than 2002 and chose to do nothing.

While motions to amend a complaint under Rule 15 should be construed liberally, leave to amend should not be granted where the opposing party will suffer substantial prejudice as a result of the amendment. "Prejudice to the adverse party is the paramount consideration in motions to amend." *State ex rel. Bd. of Ed. of Ohio Cty. v. Spillers*, 164 W.Va. 453, 455, 259 S.E.2d 417, 419 (1979). Additionally, an amendment to a complaint should be allowed only if "the amendment permits the presentation of the merits of the action[.]" Syllabus Point 3, in part, *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973).

In this case, Standard Oil seeks to assert a claim that is inarguably barred by the ten-year statute of limitation for actions based upon written contracts. Allowing the assertion of Standard Oil's "first breach" claim would prejudice Consol by compelling it to respond to a time-barred action. If the circuit court allowed the amendment, then upon the motion of Consol the circuit court would be required to dismiss the action because of the statute of limitation, thereby precluding ever reaching the merits of the action. We therefore find no abuse of discretion in the circuit court's decision denying Standard Oil permission to amend its declaratory judgment complaint.

For the foregoing reasons, we affirm the circuit court's June 5, 2015, orders.

Affirmed.

**ISSUED: October 17, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II