**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2016 Term**

_____

No. 15-0013

_____

**FILED**

**January 26, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**JOHN DOE, an unknown driver,**
**Petitioner**

**v.**

**HASIL PAK,**
**Respondent**

_____

**Appeal from the Circuit Court of Monongalia County**
**The Honorable Phillip D. Gaujot, Judge**
**Civil Action No. 11-C-621**

**REVERSED AND REMANDED**

_____

**Submitted: January 20, 2016**
**Filed: January 26, 2016**

Tiffany R. Durst, Esq.
Nathaniel D. Griffith, Esq.
Pullin, Fowler, Flanagan, Brown & Poe,
PLLC
Morgantown, West Virginia
Counsel for the Petitioner

John R. Angotti, Esq.
David J. Straface, Esq
Angotti & Straface
Morgantown, West Virginia
Counsel for the Respondent

**CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.**

**JUSTICE DAVIS concurs in part, and dissents in part, and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.       "It is generally recognized that there can be only one recovery of damages for one wrong or injury.  Double recovery of damages is not permitted; the law does not permit double satisfaction for a single injury."  Syl. Pt. 7, in part, *Harless v. First Nat'l Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982).

2.       When an insurer makes an advance payment to a tort-claimant upon condition that the advance payment will be credited against a future judgment or determination of damages, the damages recovered by the claimant on a subsequent judgment shall be reduced by the amount of the advance payment.

**Chief Justice Ketchum:**

The respondent, Ms. Hasil Pak, was injured in a car wreck caused by an unknown, hit-and-run driver. Ms. Pak filed an uninsured motorist suit against the unknown driver, "John Doe," seeking damages for her injuries. Her uninsured motorists' insurance carrier was the petitioner, State Farm, who defended the lawsuit.[1]

Before trial, State Farm advanced Ms. Pak $30,628.15, on her damages. After a jury returned a verdict for Ms. Pak, the Circuit Court of Monongalia County entered a judgment order on December 4, 2014, refusing State Farm any credit against the final judgment for the advance payment.

State Farm now appeals the circuit court's order asserting that the court erred in refusing to credit the advance payment against the final judgment. State Farm also alleges that the circuit court erred in calculating prejudgment interest.

Upon review, we agree that the circuit court erred when it refused to credit State Farm's advance payment against the final judgment. The circuit court also erred in calculating prejudgment interest. We reverse the circuit court's December 4, 2014, judgment order and remand this case for proceedings consistent with this opinion.

---

[1] West Virginia Code § 33-6-31(c) [2015] provides that: "[a] motor vehicle shall be deemed to be uninsured if the owner or operator thereof be unknown[.]" Accordingly, an action for damages "may be instituted against the unknown defendant as 'John Doe[.]'" W.VA. CODE § 33-6-31(e)(3) [2015]. The action is served on the plaintiff's uninsured motorists' insurance carrier "as though such insurance company were a party defendant. The insurance company has the right to file pleadings and take other action allowable by law in the name of John Doe." *Id*.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

On November 23, 2009, Ms. Pak was involved in a car wreck when an unknown, hit-and-run driver allegedly crossed into her lane while traveling in the opposite direction and hit her car. Ms. Pak was physically injured, and she claims her injuries kept her from, *inter alia*, performing her housework. An expert testified as to the value of the housework that she was unable to perform. However, she did not claim she paid, or incurred an obligation to pay, for help with her housework.

Ms. Pak had a motor vehicle insurance policy from State Farm. Pursuant to the medical payments coverage of this policy, State Farm paid $25,000.00 for Ms. Pak's medical bills.

Additionally, Ms. Pak had coverage for uninsured motorists with a limit of $100,000.00 for personal injuries. Pursuant to the uninsured motorists' coverage, State Farm offered to settle Ms. Pak's case for $30,628.15. Ms. Pak refused the offer.

Ms. Pak filed a complaint against the unknown (and therefore uninsured) "John Doe" in the circuit court and served State Farm with the complaint to recover damages from her uninsured motorists' coverage. Prior to trial, State Farm offered to pay Ms. Pak $30,628.15 as an advance payment toward any subsequent judgment.[2] Pursuant to this offer, State Farm sent the following letter to Ms. Pak's counsel on June 29, 2012:

---

[2] "The term 'advance payment' refers to the 'laudable practice' of expediting relief to an injured party by making payment prior to, and in anticipation of, a future settlement or judgment." 47 AM. JUR. 2d *Judgments* § 822 (2015) (footnote omitted).

2

> Your client's current demand is $100,000.00; which is the policy limit. At this time, it appears we have reached an impasse. I am enclosing our payment for the amount of the initial offer since our last evaluation. The initial offer was $30,628.15. . . .
>
> *This payment will also be credited against any final determination of damages.*
>
> This payment should be considered an advance without prejudicing your client's right to receive a higher amount in the future through continued negotiations. . . . This offer or your acceptance thereof, does not waive any defenses, we may have now or in the future, under the policy.

(Emphasis added). Ms. Pak's counsel negotiated State Farm's check.

State Farm and Ms. Pak continued to disagree on the extent of her damages, and the case went to trial in September 2013. The jury returned a verdict of $101,000.00, exclusive of prejudgment interest, which included the following: $25,000.00 for medical expenses; $30,000.00 for loss of earning capacity; $10,000.00 for loss of household services to date; $6,000.00 for pain, suffering, mental anguish, and loss of enjoyment of life to date; and $30,000.00 for pain, suffering, mental anguish, and loss of enjoyment of life to be incurred in the future. The circuit court reduced the $101,000.00 verdict to $70,700.00 because the jury found Ms. Pak to be 30% at fault in the car wreck.

Ms. Pak submitted a proposed final order that did not credit State Farm for its payment of $25,000.00 on its medical payments coverage or its $30,628.15 advance payment on its uninsured motorists' coverage. State Farm objected to the proposed order on two grounds: (1) the judgment should be reduced by these payments and prejudgment interest should not accrue on them; and (2) prejudgment interest should not accrue on the

3

damages awarded for "loss of household services" because she did not expend money, or incur any financial obligation, for those services.

On May 14, 2014, the circuit court entered an order ruling on State Farm's objections. In its order, the circuit court found that Ms. Pak's judgment should be reduced by State Farm's $25,000.00 payment on its medical payments coverage for Ms. Pak's medical bills, and thus, prejudgment interest should not accrue on that amount.[3] However, the circuit court refused to credit State Farm for its $30,628.15 advance payment or omit that amount from the calculation of prejudgment interest. As to this advance payment, the circuit court concluded that: "this amount was gratuitously paid by State Farm . . . this payment could very well be found to constitute a gift[.]"

State Farm filed a motion to alter or amend the circuit court's May 14, 2014, order. In its motion, State Farm contended the circuit court erred by refusing to credit it for the $30,628.15 advance payment and incorrectly calculated prejudgment interest. The circuit court denied State Farm's motion, and on October 3, 2014, it entered a judgment order which failed to credit State Farm for any of the earlier payments, including the $25,000.00 payment under its medical payments coverage or the $30,628.15 advance payment on its uninsured motorists' coverage.

---

[3] A "non-duplication" of benefits provision in an underinsured motorists' policy permits an insurer to reduce the insured's damages by amounts received under medical payments coverage. *State Farm Mut. Auto. Ins. Co. v. Schatken*, 230 W.Va. 201, 737 S.E.2d 229 (2012). *But see, Schatken*, 230 W.Va. at 212, 737 S.E.2d at 240 (Ketchum, C.J., dissenting) (The non-duplication of benefits provision is contrary to the plain language of West Virginia's uninsured motorists' statute).

4

State Farm then filed a second motion to alter or amend, this time as to the circuit court's October 3, 2014, judgment order. On December 4, 2014, the circuit court entered the amended judgment order that is the basis for this appeal. In this order, the circuit court credited State Farm for its $25,000.00 payment under Ms. Pak's medical payments coverage and ruled that prejudgment interest did not accrue on that amount. However, the circuit court ruled again that State Farm's $30,628.15 advance payment was likely a "gift." Therefore, the circuit court gave State Farm no credit for this advance payment, and it was included in the calculation of prejudgment interest. In addition, prejudgment interest was calculated on the $10,000.00 awarded for "loss of household services" even though Ms. Pak made no out-of-pocket expenditures to have someone else perform her housework. State Farm now appeals the circuit court's December 4, 2014, judgment order to this Court.

## II.
## STANDARD OF REVIEW

State Farm requests that we review the circuit court's denial of its motion to alter or amend judgment. We have held: "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W.VA. R. CIV. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

5

Accordingly, "We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, in part, *Walker v. W.Va. Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). To the extent this appeal is based on the calculation of prejudgment interest, it is subject to de novo review. *State Farm Mut. Auto. Ins. Co. v. Rutherford*, 229 W.Va. 73, 76, 726 S.E.2d 41, 44 (2011).

### III.
### ANALYSIS

State Farm raises three issues for appeal. First, State Farm made a $30,628.15 advance payment under its uninsured motorists' coverage to Ms. Pak, which was accompanied by a letter stating: "This payment will also be credited against any final determination of damages." State Farm argues that the circuit court's failure to credit it for this advance payment requires it to pay Ms. Pak twice for the same damages and thus violates public policy. Second, State Farm argues the circuit court was required to deduct the $30,628.15 advance payment before calculating prejudgment interest on Ms. Pak's judgment. Finally, State Farm asserts prejudgment interest does not accrue on the award for "loss of household services" because she did not expend funds or incur any financial obligation for household services.

#### A. *State Farm's $30,628.15 Advance Payment to Ms. Pak*

State Farm made a $30,628.15 advance payment to Ms. Pak before trial, which according to the accompanying letter, would "be credited against any final

6

determination of damages." Ms. Pak accepted this money, but now she opposes a credit for State Farm's advance payment. In essence, she wants to collect $30,628.15 from State Farm twice for the same damages.

State Farm argues that the circuit court allowed for a windfall for Ms. Pak by refusing credit for its advance payment. It contends that this double recovery by Ms. Pak directly contradicts West Virginia public policy. We agree.

West Virginia law evinces a "strong public policy against the plaintiff recovering more than one complete satisfaction." *Bd. of Educ. of McDowell Cnty v. Zando, Martin & Milstead*, 182 W.Va. 597, 606, 390 S.E.2d 796, 805 (1990). "It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit double satisfaction for a single injury." Syl. Pt. 7, in part, *Harless v. First Nat'l Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982). *See also Zando, Martin & Milstead*, 182 W.Va. at 605, 390 S.E.2d at 804 ("[T]he use of the verdict credit [for joint tortfeasors] ensures against double recovery by the plaintiff.").

Likewise, we have recognized that the primary goal of our uninsured/underinsured motorists' statute is "full compensation, without duplicating benefits." *State Auto Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 568, 396 S.E.2d 737, 749 (1990) (referencing W.VA. CODE § 33-6-31(b)). Indeed, "The goal of providing full indemnification to individuals injured by . . . inadequately insured motorists would be well served by employing setoffs so [that] they apply to avoid the duplication of benefits, rather than the reduction of liability for the insurer[.]" *Id.*, 183 W.Va. at 570, 396 S.E.2d

7

at 751 (quotations and citations omitted). *See also*, Syl. Pt. 4, *State Farm Mut. Auto Ins. Co. v. Schatken*, 230 W.Va. 201, 737 S.E.2d 229 (2012) (allowing reduction of damages owed by insurer to its insured on underinsured motorists' coverage by the amount the insurer paid under the insured's medical payments coverage).

For similar reasons, jurisdictions that have considered this issue overwhelmingly support a credit against any final judgment for advances paid by an insurer.[4] For example, the Supreme Court of Alabama recognized that "a common theme runs through advance payment cases: Giving credit for advance payments prevents the injured party from being reimbursed twice for the same injury." *Keating v. Contractors Tire Serv., Inc.*, 428 So. 2d 624 (Ala. 1983). Of this common theme, the Supreme Court of South Carolina observed: "Why should the respondent be allowed to collect $12,500 on a judgment that the jury has assessed at $7,000.00? The disjointedness of the question perhaps suggests why it has not been necessary heretofore to litigate it." *Russell v. Ashe Brick Co.*, 267 S.C. 640, 230 S.E.2d 814 (1976).

Not only does a credit for advance payments protect an insurer from having to pay twice for the same damages, but it also benefits insureds by encouraging expedited

---

[4] *See Douglas v. Adams Trucking Co., Inc.*, 345 Ark. 203, 46 S.W.3d 512 (2001); *Howard v. Abernathy*, 751 S.W.2d 432 (Tenn.Ct.App. 1988); *Keating v. Contractors Tire Serv., Inc.*, 428 So. 2d 624 (Ala. 1983); *Ferris v. Anderson*, 255 N.W.2d 135 (Iowa 1977); *Russell v. Ashe Brick Co.*, 267 S.C. 640, 230 S.E.2d 814 (1976); *Edwards v. Passarelli Bros Auto. Serv. Inc.*, 8 Ohio St.2d 6, 221 N.E.2d 708 (1966). To date, there has been only one jurisdiction to deny a credit for an advanced payment. In *Matthews v. Watkins Motor Lines, Inc.*, 419 So. 2d 1321 (Miss. 1982), the Supreme Court of Mississippi ruled for the insured plaintiff on a procedural technicality. Even in that case, the court stated: "advance payments made to injured persons serve a very desirable humanitarian purpose and should be encouraged[.]" *Id.* at 1323.

8

payment without resort to trial.  As the Supreme Court of Iowa has noted: "there are good reasons to support the advance payment concept, not the least of which is the plain economic need of a severely injured person and the delays of our court system." *Ferris v. Anderson*, 255 N.W.2d 135, 138 (Iowa 1977).  Likewise, commentators have remarked that advance payments:

> [H]ave been designed to avoid criticisms which have been leveled at the liability insurance system on the ground that the injured party is normally in no financial position to await the outcome of a trial which might be long delayed and that therefore liability insurers are in a position to exert leverage in forcing a settlement more favorable than might otherwise be available because of the pressure of the injured party's financial necessities.

W. E. Shipley, *Effect of Advance Payment by Tortfeasor's Liability Insurer to Injured Claimant*, 25 A.L.R.3d 1091 (1966).

We are compelled by this rationale to follow our sister jurisdictions in recognizing a credit for advance payments.  Therefore, we hold that when an insurer makes an advance payment to a tort-claimant upon condition that the advance payment will be credited against a future judgment or determination of damages, the damages recovered by the claimant on a subsequent judgment shall be reduced by the amount of the advance payment.[5]

---

[5] Conversely, "If the amount of the advance payment . . . exceeds the subsequent judgment rendered, the judgment is deemed satisfied.  This is in keeping with the rule that a judgment holder is entitled to only one satisfaction of the claim."  47 AM. JUR. 2d *Judgments* § 822 (2015) (footnotes omitted).

9

The circuit court found that State Farm's advance payment was a "gift," or a "gratuitous offer." This conclusion "strikes us wrong with the 'force of a five-week-old, unrefrigerated dead fish.'" *Brown v. Gobble*, 196 W.Va. 559, 563, 474 S.E.2d 489, 493 (1996) (quoting *United States v. Markling*, 7 F.3d 1309, 1319 (7th Cir. 1993)).

The letter accompanying the $30,628.15 advance payment clearly stated: "This payment will also be credited against any final determination of damages." This statement is self-explanatory. It was abundantly clear that State Farm was paying an advance against any future judgment from this case. Without question, Ms. Pak accepted the payment under that condition.[6] State Farm's advance payment was not a "gift." Therefore, the circuit court clearly erred by failing to reduce the jury's verdict by the $30,628.15 advance payment when it calculated the final judgment.[7]

---

[6] Ms. Pak is a Korean immigrant with limited English-speaking skills. If a language barrier kept her from understanding State Farm's letter, it would have been incumbent on her lawyer to adequately explain its meaning.

[7] Ms. Pak argues that State Farm may not prevail on the advance payment issue because it was raised after the September 2013 trial. A motion to alter or amend judgment "is not a vehicle for a party to . . . advance arguments that could and should have been presented to the trial court prior to judgment." *Corp. of Harpers Ferry v. Taylor*, 227 W.Va. 501, 506, 711 S.E.2d 571, 576 (2011) (quoting FRANKLIN D. CLECKLEY, ROBIN JEAN DAVIS & LOUIS J. PALMER, JR., LITIGATION HANDBOOK ON WEST VIRGINIA RULES OF CIVIL PROCEDURE §59(e) at 1179 (3d ed. 2008)). Thus, a motion to alter or amend judgment is not appropriate for asserting a new legal theory.

However, State Farm first raised the advance payment issue in its objections to Ms. Pak's proposed final order, not in a motion to alter or amend judgment. State Farm filed its objections in November 2013, well before the circuit court's judgment entered on October 3, 2014, or its amended judgment entered on December 4, 2014.

10

### B. Credit for State Farm's Advance Payment and Prejudgment Interest

State Farm also argues that the circuit court's failure to deduct its $30,628.15 advance payment caused error in calculating prejudgment interest. It further contends that prejudgment interest is properly calculated *after* deducting all credits, payments, and set-offs. Because judgment against State Farm should have been for $30,628.15 less, so should the amount on which it pays prejudgment interest.

We have held: "payment of prejudgment interest shall be on the special damages portions of *judgments* or *decrees* for the payment of money, *not on verdicts*." *State Farm Mut. Auto. Ins. Co. v. Rutherford*, 229 W.Va. 73, 78, 726 S.E.2d 41, 46 (2011) (emphasis added). Generally, a circuit court must deduct all proper credits, payments, and set-offs before calculating prejudgment interest. *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, No. 1:09 CV 161, 2013 WL 5352844 (N.D. W.Va. 2014) (applying West Virginia law). For example, in *Rutherford*, the plaintiff received $130,000.00 in pre-trial settlements before gaining a $175,000.00 jury verdict. We found that "the circuit court should have deducted $130,000.00 from $175,000.00 and then calculated prejudgment interest on the special damages portion of the remaining amount of $45,000.00." *Rutherford*, 229 W.Va. at 79, 726 S.E.2d at 47.

---

Finally, Ms. Pak filed her proposed final order after the September 2013 jury trial. Accordingly, State Farm had nothing to object to until that time. *See Passarelli*, 8 Ohio St.2d at 8-9, 221 N.E.2d at 710-711 (Defendant insurer could request credit for advance payment after trial because it was not until then that right to receive credit came into existence.).

11

After deducting all proper credits, payments, and set-offs, the circuit court then determines "the special damages portion of the remaining amount." *See, e.g.*, *Small v. Jack B. Kelly*, No. 1:10 CV 121, 2012 WL 4056745 (N.D. W.Va. 2012) (applying West Virginia law).

We agree with State Farm that the circuit court was required to deduct State Farm's $30,628.15 advance payment from Ms. Pak's verdict and then calculate prejudgment interest on the special damages portion of the remaining amount. The circuit court erred in failing to do so.

### C. Prejudgment Interest on "Loss of Household Services."

The circuit court also found that Ms. Pak was entitled to prejudgment interest under West Virginia Code § 56-6-31 [2006] for "past loss of household services."[8] We have held: "prejudgment interest under *W.Va. Code*, 56-6-31 [1981] is to

---

[8] State Farm does not appeal the trial court allowing an expert to testify as to the value of the housework she was unable to perform due to the wreck. Ms. Pak did not incur expense in obtaining help with her housework, and there is no evidence that anyone gratuitously performed housework for her or that another person was damaged as a result of the loss of her household services. *See Kretzer v. Moses Pontiac Sales, Inc.*, 157 W.Va. 600, 201 S.E.2d 275 (1973); *Kenney v. Liston*, 233 W.Va. 620, 760 S.E.2d 434 (2014). *But see, Johnson v. Buckley*, No. 11-0060, 2011 WL 8199962 (W.Va. 2011).

In the author's opinion, a plaintiff's mere loss of the ability to do housework is a customary activity, and is not subject to economic calculation. We have held that "The loss of customary activities constitutes the loss of enjoyment of life." *Flannery v. U.S.*, 171 W.Va. 27, 30, 297 S.E.2d 433, 436 (1982). "The loss of enjoyment of life resulting from a permanent injury is part of the general measure of damages flowing from the permanent injury and is not subject to an economic calculation." Syl. Pt. 4, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993). *See also Liston v. Univ. of W. Va. Bd. of Trustees*, 190 W.Va. 410, 415, 438 S.E.2d 590, 595 (1993) (Trial court

12

be recovered only on special or liquidated damages[.]" *Grove v. Myers*, 181 W.Va. 342, 348, 382 S.E.2d 536, 542 (1989). "[G]eneral damages, such as pain and suffering, [are] not subject to prejudgment interest." *Id.*, 181 W.Va. at 349, 382 S.E.2d at 543. Because Ms. Pak's loss of household services were not liquidated damages, the issue becomes whether Ms. Pak's loss of household services are "special damages" as defined by West Virginia Code § 56-6-31.

West Virginia Code § 56-6-31 defines special damages as "lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures, as determined by the court." The circuit court found that Ms. Pak's loss of household services constituted an "out-of-pocket expenditure" even though she did not hire anyone to help her with household chores, expend any money for household services, or incur an obligation to pay for assistance with housework. Rather, her chores were neglected during this time. State Farm argues that, under the plain language of West Virginia Code § 56-6-31, Ms. Pak's loss of household services were not a "similar out-of-pocket expenditure" because she did not pay, or incur an obligation to pay, for household services.

We have held that actual "[e]xpenditures for household services are included within the phrase 'similar out-of-pocket expenditures' used in W.Va. Code, 56-6-31 (1981), and prejudgment interest may be awarded under that section." Syl. Pt. 8, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993). We further explained that these

---

erred when it admitted an expert's economic calculations concerning plaintiff's damages for loss of enjoyment of life.).

13

expenditures were "*out-of-pocket funds* the plaintiffs lost due to the negligence of the defendant's decedent[.]" *Id.*, 191 W.Va. at 51-52, 443 S.E.2d 208-09 (emphasis added). Thus, our holding in *Wilt* authorizes prejudgment interest for loss of household services only where the claimant has incurred an obligation to pay some sort of compensation for household services.

Therefore, Ms. Pak is not entitled to prejudgment interest under West Virginia Code § 56-6-31 for her loss of household services because she did not pay, or incur an obligation to pay, for those services. The circuit court erred by finding otherwise.

## IV.
## CONCLUSION

The circuit court erred when it failed to deduct State Farm's $30,628.15 advance payment against the final judgment. The circuit court also erred by awarding prejudgment interest on State Farm's $30,628.15 advance payment and on Ms. Pak's award for loss of household services. Accordingly, we reverse the trial court's December 4, 2014, judgment order and remand this case for proceedings consistent with this opinion.

Reversed and Remanded.

14