# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JOHN D. CHAUDRON and**
**LINDA L. CHAUDRON,**
**Plaintiffs Below, Petitioners**

**FILED**
**February 27, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-30**   (Cir. Ct. Hampshire Cnty. No. 17-C-104)

**STEVEN J. SWINGLE,**
**KARA G. SWINGLE, and**
**MICHAEL A. MILLS,**
**Defendants Below, Respondent**

## MEMORANDUM DECISION

Petitioners John D. Chaudron and Linda L. Chaudron ("the Chaudrons") appeal three orders of the Circuit Court of Hampshire County dated August 5, 2022, October 11, 2022, and December 31, 2022. The August 5, 2022, order is the final verdict order below, the October 11, 2022, order denied the Chaudrons' motion to amend the final order, and the December 31, 2022, order denied the Chaudrons' request for prejudgment interest, attorney's fees, and costs. Respondents Steven J. Swingle and Kara G. Swingle ("the Swingles") timely filed their response.[1] The Chaudrons filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the lower tribunal's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The Chaudrons are a married couple who jointly own Lots 14, 15, and 16 in the Whitetail Mountain Subdivision ("subdivision") located in Romney, West Virginia. The Swingles are husband and wife. Mr. Swingle was the owner of Lots 13 and 20 and held

---

[1] The Chaudrons are represented by Joseph L. Caltrider, Esq., and Liana L. Stinson, Esq. The Swingles are represented by James O. Heishman, Esq. Respondent Michael A. Mills did not participate in this appeal.

1

ownership interest in Lots 10 and 12 in the subdivision.[2] Respondent Michael A. Mills owns an interest in Lot 19 and Lot 12 in the subdivision.

The Chaudrons and the Swingles were neighbors in the subdivision from 2004 to 2019. The Swingles' home was on Lot 20, which is adjacent to the Chaudrons' Lots 14, 15, and 16. These lots were connected by two subdivision roads, Laurel Drive and Songbird Lane. In order to access Lot 20, the Swingles routinely traveled across the Chaudrons' Lots 14, 15, and 16 using Laurel Drive and Songbird Lane.

Over time, tensions developed between the Chaudrons and the Swingles following several incidents in the subdivision. There were several disagreements between the parties regarding, among other things, the Swingles' animals running loose; the Chaudrons photographing and videoing the Swingles' property with game cameras; Mr. Chaudron repeatedly driving past the Swingles' home; and the Swingles obstructing Songbird Lane with vehicles, hay bales, and fences. Another incident involved Mr. Chaudron cutting logs and placing them on the edge of one of the roadways, which caused difficulties for the Swingles in using the road.

On April 19, 2016, Mrs. Swingle noticed a grey minivan driven by Mr. Chaudron go down Songbird Lane and enter the Swingles' private property to turn around. As a result of this incident, the Swingles contacted the Hampshire County Sheriff's department. The Swingles provided a timeline of events between the parties and stated that they believed that Mr. Chaudron's actions were harassment and led them to question their safety in their own home.

On May 4, 2016, as a result of the Swingles' statements, the Hampshire County Sheriff charged Mr. Chaudron with trespassing in violation of West Virginia Code § 61-3B-3 (2016) and harassment in violation of West Virginia Code § 61-2-9a (2020). A Hampshire County Magistrate subsequently dismissed the misdemeanor charges against Mr. Chaudron on November 16, 2016.

A separate incident within the subdivision involved Joseph Marley and Mr. Mills, in which the two contacted former Sheriff John Alkire and reported that Mr. Chaudron entered the Swingles' property, took pictures, and repeatedly drove up and down the road. Mr. Chaudron was charged with a separate count of trespassing and defying an order to leave in violation of West Virginia Code § 61-3B-3. Allegedly, Mr. Mills also assisted the Swingles in making several other complaints to local law enforcement regarding the Chaudrons.

---

[2] Mr. Swingle also held an ownership interest in one or more parcels of real estate that adjoin Lots 14, 15, 16, 20, 22, and 23 of the subdivision, but those parcels were situated outside of the subdivision.

The Chaudrons, along with the Whitetail Mountain Property Owners Association, Inc., and Ricky Barber, Cindi L. Barber, and Jean A. Krammes, filed their complaint in the underlying matter against the Swingles, Mr. Mills, Jesse Mills, and Mr. Marley on November 15, 2017. In the complaint, the Chaudrons sought an injunction to prevent the Swingles from trespassing on their subdivision lots and rights-of-way, as well as monetary damages for malicious prosecution, abuse of process, civil conspiracy, and willful, wanton, and reckless conduct.[3] Specifically, the Chaudrons alleged that the Swingles had violated the subdivision's covenants, trespassed on subdivision rights-of-way, damaged their property, and overburdened the use of subdivision rights-of-way. The Chaudrons further alleged that Mr. Swingle made false police reports to the Hampshire County Sheriff's Office that stated that Mr. Chaudron had threatened him and that he believed Mr. Chaudron to be unstable. Further, the Chaudrons alleged that Mr. Swingle made false reports to the West Virginia Division of Natural Resources, Law Enforcement Section that Mr. Chaudron was hunting without a license on his subdivision lots, and that Mrs. Swingle made a false and malicious report to the Hampshire County Sheriff's Office that Mr. Chaudron repeatedly trespassed on the Swingles' property.

In an Agreed Order dated May 4, 2018, the parties agreed to extend the deadline by which the Swingles could file their Answer, so long as they agreed to remove the covenant violations, including buildings, fences and vehicles, livestock, and other obstructions from their subdivision lots, sold their home in the subdivision, and ceased farming operations. The Chaudrons dismissed their claims for injunctive relief and proceeded with their claims for malicious prosecution, abuse of process, civil conspiracy, negligence, gross negligence, and willful, wanton, or reckless conduct related to the Swingles' statements to the Sheriff's Deputy. On September 26, 2019, the Swingles filed their Answer, which included counterclaims against the Chaudrons and sought $280,000 in damages for removal of their covenant violations, moving expenses, and intentional infliction of emotional distress. The Swingles also sought a prescriptive easement across the Chaudrons' Lot 15. On May 10, 2021, the Swingles withdrew their counterclaims.

The Circuit Court of Hampshire County conducted a jury trial from June 23, 2021, to June 25, 2021. During the trial, Mr. Chaudron testified that he and Mrs. Chaudron suffered $7,233.95 in damages because of the Swingles' actions. The Chaudrons called the Swingles as adverse witnesses and presented testimony from Sheriff John Alkire, Deputy Joshua Kesner, Defendant Joseph Marley, and former Deputy Christopher Caroll by video deposition, as they were unable to testify at trial.

---

[3] The Whitetail Mountain Property Owners Association, Inc., Ricky Barber, Cindi L. Barber, and Jean A. Krammes were originally plaintiffs in this action. These plaintiffs withdrew from the case after the Swingles complied with the Agreed Order.

On June 25, 2021, the jury returned a verdict in favor of the Chaudrons. The jury found that the Swingles were guilty of malicious prosecution, abuse of process, negligence, willful, wanton, and reckless conduct, and civil conspiracy. The jury awarded the Chaudrons $6,250 in economic damages and $3,750 in general damages for a total verdict of $10,000.

After the jury verdict, the Swingles filed a motion for judgment notwithstanding the verdict on July 26, 2021. The Chaudrons filed a motion for costs on July 29, 2021, in which they requested $10,140.37 in costs. The Chaudrons also filed a motion for attorney's fees and litigation costs on July 30, 2021. On November 8, 2021, the circuit court held a hearing on these motions and invited the parties to submit proposed findings of fact and conclusions of law. On December 3, 2021, the Chaudrons filed a supplemental itemized list of $7,000 in attorney's fees incurred for post-trial motions in this matter. On July 9, 2022, the Chaudrons filed a motion for entry of judgment order. The circuit court entered a "Final Verdict Order" on August 5, 2022. On October 6, 2022, the circuit court held a hearing on all outstanding matters in the case, including the Swingles' motion for judgment notwithstanding the verdict and the Chaudrons' motion for attorney's fees and litigation costs.

On December 31, 2022, the circuit court entered its "Order Denying Defendants' Motion for Judgment Notwithstanding the Verdict; Granting Plaintiffs' Motion for Costs, in part, and Denying, in part; Order Denying Plaintiffs' Motion for Attorney Fees and Litigation Costs; Denying Plaintiffs' Request for Pre-Judgment Interest; and Granting Plaintiffs' Request that the Defendants be Held Jointly and Severally Liable." In its order, the circuit court rejected the Swingles' contention that the Chaudrons failed to establish a prima facie right to recover damages, specifically finding that the Chaudrons presented claims for malicious prosecution, abuse of process, civil conspiracy, negligence, gross negligence, and willful, wanton, or reckless conduct in the prosecution of Mr. Chaudron. The jury resolved the evidentiary conflicts in favor of Mr. Chaudron, and the circuit court held that it could not find the jury verdict to be plainly wrong.

With respect to the Chaudrons' motion for attorney's fees and costs of litigation, the circuit court found that the Swingles did not act in bad faith during the litigation and denied the motion. Further, the circuit court found that the Chaudrons were not entitled to costs for deposition-related expenses completed during discovery and denied their claim for pre-judgment interest on the economic damages awarded by the jury, finding that these damages were not capable of being rendered certain, and were thus general damages. It is from the August 5, 2022, October 11, 2022, and December 31, 2022, orders that the Chaudrons now appeal.

On appeal, the Chaudrons raise four assignments of error. First, the Chaudrons argue that the circuit court erred in denying their claims for attorney's fees and costs under *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 49, 365 S.E.2d 246, 247 (1986). Second, the

4

Chaudrons aver that the circuit court erred in denying them certain court costs, including costs associated with video depositions used to present evidence from unavailable witnesses at trial. Third, the Chaudrons assert that the circuit court erred by finding that their claims for economic damages were not capable of being rendered certain by reasonable calculation and denying their claims for prejudgment interest on economic damages. Finally, the Chaudrons claim that the circuit court erred in refusing to allow the jury to consider punitive damages against the Swingles under West Virginia Code § 55-7-29 (2015) as the jury found malice in the intentional torts of malicious prosecution, abuse of process, willful, wanton, and reckless conduct, and civil conspiracy.

Turning to the Chaudrons' first and second assignments of error regarding court costs and attorney's fees, the Supreme Court of Appeals of West Virginia has set forth that "[t]his court reviews an award of costs and attorney's fees under an abuse of discretion standard." Syl. Pt. 2, *Auto Club Prop. Cas. Ins. Co. v. Moser*, 246 W. Va. 493, 874 S.E.2d 295 (2022). "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syl. Pt. 2, *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986). Further, the Supreme Court has stated that "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Id.* at 48, 365 S.E.2d at 246, syl. pt. 3.

The record demonstrates that the circuit court completed a thorough analysis of the appropriate costs and awarded the Chaudrons $1,025.70 for service of process fees. In making its ruling, the court reasoned that both parties acted in bad faith leading up to the litigation and, accordingly, did not award attorney's fees to the Chaudrons. Notably, the circuit court referenced several incidents in which Mr. Chaudron acted in bad faith, including incidents such as Mr. Chaudron placing logs in the roadway, Mr. Chaudron repeatedly driving past the Swingles' home, and the Chaudrons placing game cameras at their property line facing the Swingles, thereby observing those who came and left from the residence. The circuit court weighed this evidence and found that both parties acted in bad faith prior to the litigation in this case, but that neither party had acted in bad faith once the litigation commenced. The circuit court concluded that the $10,000 jury verdict was commensurate to a nuisance verdict between contentious neighbors and that further costs were not appropriate. Based upon our review of the record, we cannot find that the circuit court abused its discretion in reaching these conclusions.

As to the alleged error associated with the court's denial of the Chaudron's request to recoup the costs of video depositions used at trial, we find no error. The expenses at issue were deposition-related and fall among the court costs over which the circuit court has "wide discretion in determining the amount." Syl. Pt. 3, in part, *Shafer v. Kings Tire Service, Inc.*, 215 W. Va. 169, 597 S.E.2d 302 (2004). Here, based upon the record, we

5

cannot conclude that the circuit court abused its discretion in refusing to award these particular costs to the Chaudrons.

Next, we turn to the Chaudrons' third assignment of error in which they argue that the circuit court erred in finding that their economic damages were not capable of being rendered certain and in denying their claim for prejudgment interest. The calculation of prejudgment interest is subject to de novo review. *Doe v. Pak*, 237 W. Va. 1, 4, 784 S.E.2d 328, 331 (2016) (citing *State Farm Mut. Auto Ins. Co. v. Rutherford*, 229 W. Va. 73, 76, 726 S.E.2d 41, 44 (2011)). Our Supreme Court of Appeals has stated that "a court may only award prejudgment interest on damages it finds 'certain or capable of being rendered certain by reasonable calculation.'" *Dan's Car World, LLC v. Delaney*, 246 W. Va. 289, 300, 873 S.E.2d 820, 831 (2022). Further, "general damages, such as pain and suffering, [are] not subject to prejudgment interest." *Doe*, 237 W. Va. at 7, 784 S.E.2d at 334 (citation omitted). Here, the circuit court found that the economic damages awarded were not liquidated or capable of being rendered certain by reasonable calculation and were thus to be categorized as general damages. The record demonstrates that the Chaudrons did not present evidence or testimony regarding any real pecuniary losses such as medical bills, lost wages, or damage to property that resulted from their disputes with the Swingles. Accordingly, without such evidence, we find no error in the circuit court's ruling on prejudgment interest.

Finally, the Chaudrons argue that the circuit court abused its discretion in refusing to allow the jury to consider punitive damages against the Swingles pursuant to West Virginia Code § 55-7-29. West Virginia Code § 55-7-29 (a) provides that:

> An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless, and outrageous indifference to the health, safety and welfare of others.

With respect to punitive damages, our Supreme Court has stated that, "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion." Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 281, 489 S.E.2d 257, 258 (1996). Our review of the record does not establish that the circuit court abused its discretion in determining that the actions of the Swingles did not rise to the level of actual malice, or a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others. The circuit court found that both parties acted in bad faith prior to litigation, but that during the litigation neither party acted in bad faith. Based on the foregoing, we find that the circuit court did not abuse its discretion in refusing to allow the jury to consider punitive damages.

Accordingly, we affirm the Circuit Court of Hampshire County's August 5, 2022, October 11, 2022, and December 31, 2022, orders.

6

Affirmed.

**ISSUED:** February 27, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

7