# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION,**
**Defendant Below, Petitioner**

**FILED**
**July 15, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-148**   (Cir. Ct. of Kanawha Cnty. No. 20-C-602)

**FRANCIS IACOVONE, individually, and as**
**Administrator of the Estate of Rocco Iacovone,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

Petitioner West Virginia Division of Corrections and Rehabilitation ("WVDCR") appeals three orders of the Circuit Court of Kanawha County, which followed a jury trial: (1) the December 16, 2022, Judgment Order; (2) the March 10, 2023, Amended Judgment On Jury Verdict Order ("Amended Judgment Order"); and (3) the March 10, 2023, Proposed Order Denying the Division of Corrections and Rehabilitation's Rule 59 Motion for New Trial and Motion to Vacate Judgment on Jury Verdict ("Order Denying New Trial"). Below, the jury returned a verdict for Respondent Francis Iacovone, acting as administrator of the estate of his son, Rocco Iacovone, finding that WVDCR had acted with deliberate indifference in failing to provide timely medical care to Rocco Iacovone, an inmate at a WVDCR facility, resulting in his death.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' written and oral arguments, the record on appeal, and the applicable law, this Court finds that there is error in the lower tribunal's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21 of the Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, we affirm, in part, and vacate, in part, the decision of the circuit court and remand this matter for further proceedings consistent with this decision.

In March of 2018, Rocco Iacovone was incarcerated at a WVDCR facility, the Huttonsville Correctional Complex ("Huttonsville"), in Randolph County, West Virginia. After entering the custody of WVDCR, Mr. Iacovone disclosed to WVDCR staff that he suffered from a heart condition, congenital aortic stenosis, and had a medical history of cardiac issues.

---

[1] Petitioner WVDCR is represented by William E. Murray, Esq. Respondent Francis Iacovone is represented by W. Jesse Forbes, Esq., Jennifer N. Taylor, Esq., L. Dante diTrapano, Esq., and Amanda J. Davis, Esq.

1

During the weekend of August 24, 2018, Mr. Iacovone contracted an infection. When Mr. Iacovone reported this to correctional staff, he was told to return to his cell. Over the course of that weekend, Mr. Iacovone's condition deteriorated, and he failed to appear for regularly scheduled activities, including meals and standing counts of inmates. Eventually, on August 28, 2018, Mr. Iacovone's cellmate reported to Billy Greene, a correctional counselor, that Mr. Iacovone was ill. After returning with the cellmate, Mr. Greene observed that Mr. Iacovone could speak, but he appeared visibly unwell and needed assistance moving. The two men obtained a wheelchair and transported Mr. Iacovone to the Huttonsville medical unit, operated by Wexford Health ("Wexford"). Wexford staff attempted to stabilize Mr. Iacovone and arranged for him to be air transported to a hospital. However, while in transit, Mr. Iacovone succumbed to his infection. A medical examination determined Mr. Iacovone's cause of death to be "the result of acute bacterial endocarditis due to complications of congenital aortic stenosis."

On July 20, 2020, Respondent Francis Iacovone brought a suit against WVDCR in the Circuit Court of Kanawha County, alleging, among other claims, deliberate indifference.[2] Later, Respondent filed an amended complaint, adding Wexford and Dr. David Proctor, Wexford's medical director, as defendants. However, before trial, Respondent reached a settlement with Wexford and Dr. Proctor, and agreed to dismiss them from the suit.

Two weeks before trial, Respondent notified WVDCR of his intention to present the testimony of two undisclosed witnesses. These individuals, Michael Hoosier and William Hardman, were inmates who resided in the same cell area as Mr. Iacovone and possessed direct knowledge of the events being litigated. WVDCR objected, arguing that Respondent's failure to previously disclose these individuals by name was tantamount to trial by ambush. Despite WVDCR's objection, the circuit court permitted their testimony, concluding that WVDCR had notice of these individuals because, as inmates incarcerated in its custody, WVDCR possessed unrestricted access to these individuals, their identities, and its own internal investigation into these events.[3]

On November 14, 2022, the matter proceeded to trial on the issue of deliberate indifference.[4] On the third day of trial, Respondent called a medical expert, Bruce Charash, M.D., a Board-certified internist and cardiologist, to establish that WVDCR's failure to

---

[2] Aside from the deliberate indifference claim, Respondent agreed to dismissal of his other claims.

[3] Respondent also noted that he had disclosed an intention to call "[a]ny and all witness identified by the Defendants in this matter," referencing Wexford's disclosure of its intention to call "[u]nknown inmates that interacted with the deceased prior to his death."

[4] We limit our discussion of the trial to events relevant to this appeal.

provide treatment played a causal role in Mr. Iacovone's death. Dr. Charash testified that Mr. Iacovone's infection spread to his blood, which, left untreated over the weekend, worsened and ultimately caused his body to enter septic shock. Dr. Charash opined that, had Mr. Iacovone received treatment the day before, he would have had a 90–95% chance of survival. On cross-examination, WVDCR sought to impeach Dr. Charash regarding prior deposition statements where he alleged Wexford had failed to educate Mr. Iacovone on the proper use of Motrin, given his heart condition.[5] Respondents objected, arguing that WVDCR's line of questioning was outside the scope of direct examination, as Dr. Charash's testimony was offered to prove causation, not standard of care. The circuit court sustained Respondent's objection, concluding that Dr. Charash was a causation witness, noting he did not offer testimony regarding standard of care. Additionally, the circuit court expressed concern regarding WVDCR's intention to refer to Wexford as a "defendant" while examining Dr. Charash, as that characterization could confuse the jury, given that Wexford did not/was not appearing at trial.

After Respondent's objection was resolved, WVDCR sought clarification from the circuit court on a related point, expressing its intention to question Respondent Francis Iacovone "about the fact that he originally brought suit against Wexford because he felt they were at fault . . . and [to] ask him if he still feels that Wexford was at fault in the death of his son." Respondent again objected, arguing that the jury would draw improper inferences from discussing a defendant who is no longer a party. The circuit court sustained the objection, once again concluding that this line of questioning could lead the jury to speculate as to why Wexford was no longer involved in the litigation.

Before closing arguments, the parties conferred with the circuit court to discuss proposed jury instructions and which parties (and nonparties) should be listed on the verdict form. Regarding the verdict form, the parties agreed to list WVDCR, Wexford, and Rocco Iacovone on the form, allowing the jury to assess fault against each of them respectively. However, two sets of jury instructions remained disputed.

First, WVDCR requested a jury instruction regarding mitigation of damages, which would require the jury, in assessing the fault of the parties, to consider whether Mr. Iacovone had made reasonable efforts to mitigate his damages.[6] The circuit court declined

---

[5] Dr. Charash explained that the use of Motrin can artificially lower an individual's temperature, which could conceal a fever and mask the presence of a serious infection.

[6] WVDCR proposed the following mitigation of damages instruction:

> The Court instructs the jury that Rocco Iacovone had a duty to seek medical attention and to use reasonable efforts to mitigate his damages. To mitigate means to avoid or reduce damages. This only applies if you find that Defendant is liable and that Plaintiff suffered damages. If you find that Rocco

to give this instruction. In its later order denying WVDCR's post-trial motion for a new trial, the circuit court explained that Mr. Iacovone could not take affirmative action to mitigate his damages due to his incarceration. As an inmate, Mr. Iacovone was completely dependent upon WVDCR for medical care, and was not at liberty to seek treatment on his own. The remaining contested instructions defined the elements of deliberate indifference. The circuit court adopted Respondent's proposed instructions over WVDCR's, concluding Respondent had provided a more concise, less confusing statement of the law.

On November 17, 2022, the jury returned a verdict for Respondent, assigning 100% of fault to WVDCR and 0% to Mr. Iacovone and Wexford. The jury awarded Respondent $16,237.00 for funeral and burial expenses; $400,000 for lost earning capacity; $275,000 for lost household services; and $20,000.00 for pain and suffering, totaling $711,237.00.

The circuit court entered its Judgment Order on December 16, 2022, awarding Respondent pre- and post-judgment interest. Post-judgment interest was awarded on the total verdict at a 4% interest rate, running from the date of the verdict until paid. Prejudgment interest was awarded for each category of damages (except for pain and suffering) at variable rates:

> prejudgment interest on the amount of $691,237.00 of the Jury's verdict as follows: at the rate of 4.5% from August 28, 2018 through December 31, 2018 ($10,652.50); at the rate of 5.5% from January 1, 2019 through December 31, 2019 ($38,018.03); at the rate of 4.75% from January 1, 2020 through December 31, 2020 ($32,833.75); at the rate of 4.0% from January 1, 2021 through December 31, 2021 ($27,649.48); and at the rate of 4.0% from January 1, 2022 through November 17, 2022 ($24,240.64); totaling $133,394.41 in prejudgment interest.

On December 30, 2022, WVDCR filed its Rule 59 motion, requesting a new trial based upon the circuit court's erroneous trial rulings and jury instructions. Additionally, WVDCR requested the judgment be amended with respect to the circuit court's calculation of pre- and post-judgment interest. A hearing on the motion was held on February 7, 2023. There, the parties indicated they had reached a partial agreement regarding the judgment interest issues. Regarding prejudgment interest, the parties agreed that a single interest rate should have been applied, as opposed to the variable rates utilized in the Judgment Order. Regarding post-judgment interest, the parties agreed that the interest should have begun to run from the date of the Judgment Order, not the verdict. However, the parties still disputed whether the entry of an amended judgment order required post-judgment interest to be set at the then-effective 2023 rate or if the rate was required to relate back to the entry of the

Iacovone unreasonably failed to take advantage of an opportunity to lessen his damages, you must attribute fault to Rocco Iacovone.

4

original Judgment Order in 2022.[7] Further, WVDCR maintained that the circuit court had improperly awarded prejudgment interest on certain categories of damages.

On March 10, 2023, the circuit court entered its Amended Judgment Order adopting Respondent's position. In it, the circuit court set a single rate for prejudgment interest, and set post-judgment interest at the 2023 rate:

> WHEREFORE, it is hereby further ORDERED and ADJUDGED that the Amended Judgment On Jury Verdict Order of this Court is as follows: Plaintiff shall recover from the Defendant West Virginia Division of Corrections and Rehabilitation the sum of $711,237.00, with prejudgment interest on the amount of $691,237.00 of the Jury's verdict at the rate of 4.5% per year from August 28, 2018 through March 1, 2023 totaling $140,188.54 in prejudgment interest; and with post-judgment interest thereon the entire judgement amount at the current 2023 interest rate of 7.0% per year from the date of entry of this Amended Judgment On Jury Verdict Order until paid.

Simultaneously, the circuit court entered an order denying WVDCR's motion for a new trial, resolving all of its remaining arguments for Rule 59 relief. Now, WVDCR appeals the following orders of the circuit court: (1) the December 16, 2022, Judgment Order; (2) the March 10, 2023, Amended Judgment Order; and (3) the March 10, 2023, Order Denying New Trial.

A circuit court's denial of a Rule 59 motion is reviewed under an abuse of discretion standard. *See* Syl. Pt. 3, *In re State Pub. Bldg. Asbestos Litig.*, 193 W. Va. 119, 454 S.E.2d 413 (1994). Further,

> in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Lunsford v. Shy*, 243 W. Va. 175, 181, 842 S.E.2d 728, 734 (2020) (quoting *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 104, 459 S.E.2d 374, 381 (1995)). Moreover,

---

[7] *See* W. Va. Code § 56-6-31(c) (2018) ("[T]he rate of post-judgment interest on judgments and decrees for the payment of money is two percentage points above the Fifth Federal Reserve District secondary discount rate in effect on January 2, of the year in which the judgment or decree is entered[.]").

""""The ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).' Syllabus point 2, *Estep v. Mike Ferrell Ford Lincoln–Mercury, Inc.*, 223 W.Va. 209, 212, 672 S.E.2d 345, 348 (2008)." Syl. Pt. 2, *CSX Transp., Inc. v. Smith*, 229 W.Va. 316, 320, 729 S.E.2d 151, 155 (2012).

Syl. Pt. 2, *Grimmett v. Smith*, 238 W. Va. 54, 792 S.E.2d 65 (2016).

On appeal, WVDCR presents seven assignments of error which, broadly speaking, fall into one of three categories: (1) the circuit court's rulings on witness testimony were erroneous and prevented WVDCR from mounting a meaningful defense at trial; (2) the circuit court erred in instructing the jury regarding mitigation of damages and the elements of deliberate indifference; and (3) the circuit court erred in its calculations of pre- and post-judgment interest.

WVDCR raises three discrete issues regarding witness testimony at trial. First, WVDCR complains that it should have been permitted to examine Respondent's expert, Dr. Charash, regarding his prior statements assigning fault to Wexford. We affirm the circuit court on this point.

To begin, we note that:

[T]he extent of the cross-examination of a witness is a matter within the sound discretion of the circuit court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice. Moreover, the right of cross-examination is not an unlimited one and it is subject to the discretionary power of a circuit court to restrict or limit such cross-examination where it is justified. In its decision to restrict or limit cross-examination, the circuit court may consider such factors as the importance of the evidence to the party's case, its relevance and the danger of prejudice, confusion, or delay raised by the evidence sought to be adduced.

*Jackson v. State Farm Mut. Auto. Ins. Co.*, 215 W. Va. 634, 645, 600 S.E.2d 346, 357 (2004) (cleaned up); *see also Kominar v. Health Mgmt. Assocs. of W. Virginia, Inc.*, 220 W. Va. 542, 558, 648 S.E.2d 48, 64 (2007). Below, WVDCR's proposed examination fell outside the scope of Respondent's direct examination, as Dr. Charash only testified regarding causation, specifically to Mr. Iacovone's possibility of survival had he received treatment sooner. Instead of inquiring into that topic, WVDCR sought to develop testimony regarding a separate issue—Wexford's alleged failure to properly advise Mr. Iacovone

6

regarding his use of Motrin. Critically, when presenting its case at trial, WVDCR did not call Dr. Charash, or an expert of its own, to address Wexford's potential liability for Mr. Iacovone's death. Accordingly, we conclude the circuit court was within its discretion to restrict WVDCR's cross-examination of Dr. Charash to the scope of topics discussed during direct examination.[8]

Next, WVDCR contends that it should have been permitted to call Respondent Francis Iacovone to examine him "about the fact that he originally brought suit against Wexford because he felt they were at fault, and that he and his lawyers hired people and all that because they were at fault and ask him if he still feels that Wexford was at fault in the death of his son."[9] We no merit in WVDCR's position. Below, the circuit court concluded this line of questioning would be impermissibly confusing and prejudicial. In the circuit court's view, mentioning that Respondent initially sued Wexford—who is now conspicuously absent at trial—could invite the jury to engage in improper speculation.[10] Given our deferential standard of review and the lack of authority cited by WVDCR to demonstrate error, we conclude the circuit court did not abuse its discretion in limiting trial testimony to minimize confusion to the jury.

As its last argument in this vein, WVDCR asserts that the circuit court subjected it to trial by ambush by permitting Respondent to present Michael Hoosier and William

---

[8] In its briefing, WVDCR also claims it was denied an opportunity to impeach Dr. Charash regarding opinions he expressed in an earlier deposition. We are similarly unpersuaded by these claims. Like above, these opinions related to Wexford's alleged failure to advise Mr. Iacovone on his use of Motrin. However, while WVDCR was prohibited from discussing Wexford's alleged failure to advise, the circuit court allowed WVDCR to question Dr. Charash to account for the causal effect potential Motrin use could have on Mr. Iacovone's chances of survival. Given this, we do not find the "manifest abuse or injustice" required to set aside the circuit court's exercise of discretion on this point.

[9] On this point, WVDCR cites a single statute as support: West Virginia Code § 55-7-13d (2016), which, from our review of the record, was raised for the first time on appeal. Accordingly, we decline to address this argument on appeal. *See Whitlow v. Bd. of Educ. of Kanawha Cnty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993) ("Our general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal.").

[10] The circuit court explained:

THE COURT: . . . The jury doesn't know what resolved is. Maybe they think there wasn't enough evidence in that case and it was thrown out for some reason. I mean, it's so prejudicial. I mean, every -- so many civil cases there are multiple defendants. Never have I ever allowed the settlement of one defendant to be presented to a jury for a defendant who is still at trial.

Hardman at trial,[11] who were not previously disclosed by name, and were first disclosed two weeks before trial. However, at oral argument, WVDCR conceded this point, recognizing that it failed to preserve this issue for appeal. *See* Syl. Pt. 4, *McDougal v. McCammon*, 193 W. Va. 229, 239–40, 455 S.E.2d 788, 798–99 (1995) ("In order to preserve for appeal the claim of unfair surprise as the basis for the exclusion of evidence, the aggrieved party must move for a continuance or recess."). Accordingly, we decline to address this argument further.

WVDCR's next two arguments focus on jury instructions. At the outset, we recognize our standard of review of such matters: "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 281, 489 S.E.2d 257, 258 (1996). Further, "it will be presumed that a trial court acted correctly in giving or in refusing to give instructions to the jury, unless it appears from the record in the case that the instructions were prejudicially erroneous or that the instructions refused were correct and should have been given." *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 543, 694 S.E.2d 815, 876 (2010) (cleaned up).

In its first argument, WVDCR claims the circuit court erred in refusing to instruct the jury to consider mitigation of damages principles. Specifically, WVDCR's proposed instruction required the jury to attribute fault to Mr. Iacovone if he "unreasonably failed to take advantage of an opportunity to lessen his damages." When considering a trial court's refusal to provide a jury instruction:

> A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Syl. Pt. 11, *State v. Derr*, 192 W. Va. 165, 180, 451 S.E.2d 731, 746 (1994).

We focus our analysis on the third element of the *Derr* test.[12] WVDCR asserts that, at trial, Respondent "failed to present any evidence to show that Mr. Iacovone himself

---

[11] These individuals were also inmates in the same cell area as Mr. Iacovone.

[12] We note that, as to the first element of the *Derr* test, WVDCR argues that comparative negligence principles entitle it to present this issue to the jury; however, WVDCR does not provide any legal authority indicating that mitigation of damages principles are applicable to a deliberate indifference claim. Furthermore, because our

8

requested to go to medical or sought assistance for his illness," and, further, William Hardman testified that Mr. Iacovone refused to seek treatment. In WVDCR's view, these circumstances required the circuit court to present its requested instruction to effectuate its defense.

First, even assuming mitigation of damages principles are applicable in the context of a deliberate indifference claim, the burden of establishing Mr. Iacovone's failure to mitigate fell upon WVDCR; any lack of evidence from Respondent regarding Mr. Iacovone's efforts to mitigate is irrelevant. *See Voorhees v. Guyan Mach. Co.*, 191 W. Va. 450, 456, 446 S.E.2d 672, 678 (1994) ("the defense of mitigation of damages is an affirmative defense, the burden of which lies entirely upon the party asserting it"); *see also Smithson v. U.S. Fid. & Guar. Co.*, 186 W. Va. 195, 206, 411 S.E.2d 850, 861 (1991).

As to whether the evidence in the record required issuing the proposed instruction, we note that the duty to mitigate damages is tempered by the reasonableness of the circumstances. *See Rubin Res., Inc. v. Morris*, 237 W. Va. 370, 376, 787 S.E.2d 641, 647 (2016) ("The doctrine of mitigation of damages does not permit damages reduction based on what could have been avoided through Herculean efforts."). Turning to those circumstances, while the record reflects that, at one point, Mr. Iacovone refused Mr. Hardman's offer to take him to the medical unit, Mr. Hardman explained that Mr. Iacovone refused because he was in too much pain to move. When those efforts failed, at some point that same day, Mr. Hardman testified he decided to notify WVDCR staff of Mr. Iacovone's deteriorating condition. Further, contrary to WVDCR's assertions, the record further established that Mr. Iacovone personally informed WVDCR staff that he was unwell during the time frame at issue. In sum, the record reflects that, over the course of days, multiple inmates, including Mr. Iacovone himself, informed correctional staff of Mr. Iacovone's deterioration. Given that Mr. Iacovone was in WVDCR's custody and not at liberty to seek medical care on his own, the circuit court concluded, and we agree, under the limited facts and circumstances of this case, it is difficult to imagine what more Mr. Iacovone could have done to seek treatment.[13]

While we consider this a close issue, we are bound to afford significant deference to the circuit court's determination on this issue. *See* Syl. Pt. 12, *State v. Derr*, 192 W. Va. 165, 168, 451 S.E.2d 731, 734 (1994) ("Whether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard."). Accordingly, considering that WVDCR bore the burden to establish Mr.

---

analysis of the third element is conclusive as to our analysis of the *Derr* test, we decline to address WVDCR's arguments as to the first element.

[13] We also note that, regardless of the instruction given, the parties consented to listing Mr. Iacovone on the verdict form, which permitted the jury to allocate any attributable fault to him. The jury assigned Mr. Iacovone's fault at 0%.

9

Iacovone's failure to mitigate, and given the multiple inferences in the record Mr. Iacovone himself, alongside other inmates, informed correctional staff about his worsening condition, we find no error in the circuit court's refusal of WVDCR's proposed mitigation of damages instruction. We hold that the circuit court's exercise of discretion in refusing to issue WVDCR's mitigation of damages instruction did not constitute reversible error.[14]

WVDCR next argues that the circuit court's jury instructions did not include a necessary component of the deliberate indifference standard. Specifically, WVDCR asserts the provided instructions failed to charge the jury with finding that Mr. Iacovone suffered from a "serious" medical need.

> When reviewing the language of a given jury instruction:
>
> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. Pt. 4, *State v. Guthrie*, 194 W. Va. 657, 663–64, 461 S.E.2d 163, 169–70 (1995). We recall that our review of whether the jury was properly instructed is *de novo*. *See* Syl. Pt. 1*, State v. Hinkle*, 200 W. Va. 280, 281, 489 S.E.2d 257, 258 (1996).

Respondent's proposed instructions, which were adopted by the circuit court and read to the jury, set forth the legal elements of a deliberate indifference claim.[15] However,

---

[14] We stress that this conclusion is narrow and restrained to the specific facts and unique circumstances of this case.

[15] Respondent's proffered instructions provide, adopted by the circuit court:

This Court instructs the jury that to be liable, "[d]eliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care."

This Court instructs the jury that deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result. Deliberate

WVDCR argues its proposed instruction was the proper instruction for the jury, as without the definition of serious medical need, the jury did not adequately consider an objective element of the claim. We disagree. While the provided instruction does not break down the considerations into discrete elements, a plain reading of the instruction references that Respondent needed to "show[] that the defendants … ignored a detainee's serious need for medical care[,]" in order to satisfy its burden.

Moreover, other provided instructions, which we also consider in reviewing the jury's charge, indicate that Respondent was required to prove, and the jury needed to find, that Mr. Iacovone suffered from serious medical need. For example, one of WVDCR's provided instructions states, in part: "In order to state a claim for denial of adequate medical care, Plaintiff must prove that the actions of Defendant or its failure to act amounted to deliberate indifference to a serious medical need." Read together, we conclude that the circuit court properly instructed the jury as to its need to consider whether a "serious medical need" existed.[16]

---

indifference to the rights of others is the conscious or reckless disregard of the consequences of one's acts or omissions. While deliberate indifference is more than mere negligence or ordinary lack of due care, it is less than acting with a specific purpose to cause harm or less than having knowledge that a harm will result.

[16] In addition to this argument, WVDCR also complains that the circuit court did not include its explanation of the third element of deliberate indifference, delineating three contexts for the jury to consider. Below, the circuit court concluded WVDCR's phrasing of "at least three contexts" could be misunderstood by the jury, making Respondent's instruction the better alternative:

MR. MURRAY: Theirs is more general on just a subjective intent. And that's why I wanted to use this because this is actually medical care law.

THE COURT: That's exactly what four says. Plaintiff's instruction 4, the Court instructs the jury that to be liable deliberate indifference requires a showing that defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.

…

MR. MURRAY: I still believe that the proper language out of *Estelle* [*v. Gamble*, 429 U.S. 97, 104 (1976)] is that they intentionally denied or delayed access to medical care. That comes from the Supreme Court, that's their language.

11

WVDCR's final arguments question the circuit court's award of pre- and post-judgment interest to Respondent.[17]

> "In reviewing a circuit court's award of prejudgment interest, we usually apply an abuse of discretion standard. When, however, a circuit court's award of prejudgment interest hinges, in part, on an interpretation of our decisional or statutory law, we review *de novo* that portion of the analysis." Syllabus Point 2, *Hensley v. W. Va. Dep't of Health & Human Res.*, 203 W. Va. 456, 508 S.E.2d 616 (1998).

---

> THE COURT: But the way this instruction reads is -- I think it reads to require all three.
>
> MR. MURRAY: No, it does not. The law does not require all three is what I'm saying.
>
> THE COURT: Right. But the way this instruction reads –
>
> MR. MURRAY: Right.
>
> THE COURT: -- it sounds like it's a three part test.
>
> MR. MURRAY: **It says can manifest itself in at least one of three contexts**, and this comes straight from *Gamble*.
>
> THE COURT: **So in at least three contexts**?
>
> MR. MURRAY: **Yes.**
>
> THE COURT: **Not one of three?**
>
> MR. MURRAY: **Yes**.
>
> THE COURT: ***In at least three contexts* is what you have written here**.
>
> MR. MURRAY: **Correct.**

(Emphasis added).

As above, we conclude that the circuit court was within its discretion to offer the less confusing, but substantively similar, instruction to the jury. *See* Syl. Pt. 11, *State v. Derr*, 192 W. Va. 165, 180, 451 S.E.2d 731, 746 (1994) ("A trial court's refusal to give a requested instruction is reversible error only if . . . (2) it is not substantially covered in the charge actually given to the jury").

[17] WVDCR assigns error to the circuit court's calculation of pre- and post-judgment interest in its December 16, 2022, Judgment Order. As some of WVDCR's argued judgment interest complaints were remedied in the circuit court's March 10, 2023, Amended Judgment Order, we decline to address those issues as moot.

12

*Just. Highwall Mining, Inc. v. Varney*, 249 W. Va. 1, __, 890 S.E.2d 685, 696 (Ct. App. 2023) (quoting Syl. Pt. 14, *Tri-State Petroleum Corp. v. Coyne*, 240 W. Va. 542, 546, 814 S.E.2d 205, 209 (2018)). Further, "[t]o the extent this appeal is based on the calculation of prejudgment interest, it is subject to *de novo* review." *Doe v. Pak*, 237 W. Va. 1, 4, 784 S.E.2d 328, 331 (2016) (citing *State Farm Mut. Auto. Ins. Co. v. Rutherford*, 229 W. Va. 73, 76, 726 S.E.2d 41, 44 (2011)).

We first consider the circuit court's award of prejudgment interest. West Virginia Code § 56-6-31(b) governs the award of prejudgment interest, applicable to special or liquidated damages:

> In any judgment or decree that contains special damages, as defined below, or for liquidated damages, the court may award prejudgment interest on all or some of the amount of the special or liquidated damages, as calculated after the amount of any settlements. Any such amounts of special or liquidated damages shall bear simple, not compounding, interest. Special damages include lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures, as determined by the court. If an obligation is based upon a written agreement, the obligation bears prejudgment interest at the rate and terms set forth in the written agreement until the date the judgment or decree is entered and, after that, the judgment interest is the same rate as provided for below in subsection (c) of this section.

Here, WVDCR contends that the circuit court's award of prejudgment interest for lost earning capacity and lost household services are contrary to law. First, we consider the prejudgment interest awarded for Mr. Iacovone's lost earning capacity. Relying on *Pasquale v. Ohio Power Co.*, 187 W. Va. 292, 311, 418 S.E.2d 738, 757 (1992), WVDCR argues that prejudgment interest may only be awarded for damages (in this case, wages) accrued before the date of judgment. Because Mr. Iacovone's lost wages were calculated from the date of his anticipated release in 2025,[18] the entirety of that amount constitutes damages that accrue *after* the date of judgment, therefore, prejudgment interest cannot be awarded. We agree.

---

[18] At trial, Dr. Clifford B. Hawley, Respondent's expert economist, testified that his calculations estimating economic losses began from October 23, 2025, Mr. Iacovone's anticipated release date.

13

West Virginia Code § 56-6-31(b) permits a circuit court to award prejudgment interest for "special or liquidated damages," which specifically includes lost wages.[19] However, only those damages within the period "[between] the date the cause of action accrued [to] the date judgment is rendered" are properly subject to an award of prejudgment interest. *Jackson v. Brown*, 239 W. Va. 316, 328, 801 S.E.2d 194, 206 (2017) (citing *Grove ex rel. Grove v. Myers*, 181 W. Va. 342, 382 S.E.2d 536 (1989)). In Syllabus Point 15 of *Pasquale*, the Supreme Court of Appeals explained that "[f]uture wage loss, *accruing after the jury verdict*, is not a prejudgment loss or special damage under W. Va. Code § 56-6-31 (1981)." *Pasquale*, 187 W. Va. at 311, 418 S.E.2d at 757 (emphasis added). Here, due to his incarceration, the only wages assessed as damages were those expected to be earned by Mr. Iacovone upon his anticipated release in 2025. Accordingly, we conclude the circuit court erred in awarding prejudgment interest for lost wages.

Similarly, we find error in the circuit court's award of prejudgment interest for lost household services. As the Supreme Court of Appeals explained in *Doe v. Pak*, a plaintiff is only able to seek prejudgment interest for the loss of household services "where the claimant has incurred an obligation to pay some sort of compensation for household services." *Doe v. Pak*, 237 W. Va. 1, 7, 784 S.E.2d 328, 334 (2016) (citing *Wilt v. Buracker*, 191 W. Va. 39, 51–52, 443 S.E.2d 196, 208–209 (1993)). Like above, the record reflects that, due to his incarceration, Mr. Iacovone had no arrangement to provide any household services to Respondent and that any possible damages were calculated to accrue only after Mr. Iacovone's anticipated release in 2025. Further, the record contains no evidence of any prior arrangement regarding household services. As above, we conclude the circuit court erred in awarding prejudgment interest for lost household services.

We now turn to consider WVDCR's arguments regarding the circuit court's award of post-judgment interest. Again, WVDCR presents two arguments, which we address in turn. First, WVDCR claims the circuit court erred in simultaneously awarding both pre- and post-judgment interest for the same categories of damages, which has impermissibly subjected it compound interest, contrary to West Virginia Code § 56-6-31(a):

> Except where it is otherwise provided by law, every judgment or decree for the payment of money, whether in an action sounding in tort, contract, or otherwise, entered by any court of this state shall bear simple, not compounding, interest, whether it is stated in the judgment decree or not.

In other words, WVDCR contends that being required to pay post-judgment interest upon prejudgment interest, in effect, subjects it to compound interest. We disagree. When

---

[19] *See* W. Va. Code § 56-6-31(b) ("Special damages include lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures, as determined by the court.").

discussing the interaction between awards of pre- and post-judgment interest, the Supreme Court of Appeals has explained:

> interest akin to compound interest may be awarded upon a judgment which is comprised of both the underlying debt and prejudgment interest which has accrued thereon. That compound interest may be awarded and recovered under such circumstances is not disputed in the law of this State. *See, e.g.,* W. Va. Code § 56-6-31; *Douglass v. McCoy,* 24 W.Va. 722, 727–28 (1884).

*Hensley v. W. Virginia Dep't of Health & Hum. Res.*, 203 W. Va. 456, 467, 508 S.E.2d 616, 627 (1998). Furthermore, the Court has explicitly stated that post-judgment interest, accruing upon an underlying judgment and associated prejudgment interest, does not contravene West Virginia Code § 56-6-31(a):

> although postjudgment interest, the recovery of which is expressly authorized by statute, see W. Va. Code § 56-6-31, resembles compound interest, postjudgment interest is not true compound interest. Rather, postjudgment interest may more accurately be described as interest which accrues upon a judgment, the components of which are the principal debt and prejudgment interest, if any, which has accrued on such principal. *See* 45 Am. Jur. 2d *Interest and Usury* § 78, at 71 (1969) ("[C]ompound interest may in effect be recovered on a judgment whereby the aggregate amount of principal and interest is turned into a new principal...." (footnote omitted)).

*Hensley*, 203 W. Va. at 466 n.16, 508 S.E.2d at 626 n.16 (alteration in original). We find this guidance instructive and conclude that WVDCR's concerns regarding impermissible compound interest are misplaced; accordingly, we do not find error in the circuit court's simultaneous award of pre- and post-judgment interest.

In its final argument, WVDCR asserts that, in entering the March 10, 2023, Amended Judgment Order, the circuit court erred when it considered 2023 to be the correct interest year for the purposes of post-judgment interest. WVDCR maintains that the interest rate was required to relate back to 2022, the year the original Judgment Order was entered. We agree. The rate of post-judgment interest is controlled by West Virginia Code § 56-6-31(c), which provides, in part:

> [T]he rate of post-judgment interest on judgments and decrees for the payment of money is two percentage points above the Fifth Federal Reserve District secondary discount rate in effect on January 2, **of the year in which the judgment or decree is entered**: *Provided,* That the rate of post-judgment interest may not exceed nine percent per annum or be less than four percent per annum. The administrative office of the Supreme Court of Appeals shall annually determine the post-judgment interest rate to be paid

upon judgments or decrees for the payment of money and shall take appropriate measures to promptly notify the courts and members of the West Virginia State Bar of the rate of interest in effect for the calendar year in question. **Once the rate of interest is established by a judgment or decree as provided in this section that established rate shall after that remain constant for that particular judgment or decree**, notwithstanding changes in the Federal Reserve District discount rate in effect in subsequent years.

(Emphasis added).[20]

The statute reflects that once set in the original judgment order, the rate is intended to be durable: "once … established by a judgment … that established rate shall … remain constant for that particular judgment …." *Id.* Beyond the statutory language, permitting an amended judgment order to shift the interest rate could encourage gamesmanship and disincentivize parties from correcting erroneous judgment orders, especially if the entry of an amended order may result in a less favorable interest rate. Furthermore, this conclusion comports with the purpose underlying awards of post-judgment interest: "[p]ost-judgment interest compensates an individual for 'the delay between the judgment and the receipt of actual payment.'" *Bruce v. Steele*, 215 W. Va. 460, 463, 599 S.E.2d 883, 886 (2004) (quoting *Adams v. Nissan Motor Corp. U.S.A.,* 182 W. Va. 234, 241, 387 S.E.2d 288, 295 (1989)). Post-judgment interest is intended to ease the delay before a party is made whole, not exacerbate it. Therefore, we conclude the circuit court erred in adjusting the post-judgment interest rate to the 2023 rate.

For the aforementioned reasons, we affirm the circuit court as to its rulings on trial issues. However, we vacate the circuit court's rulings regarding its award of prejudgment interest for lost wages and lost household services. We further vacate the circuit court's ruling setting the rate of post-judgment interest at the 2023 rate, pursuant to its entry of the Amended Judgment Order, and direct that the rate of post-judgment interest must apply the 2022 rate. This matter is remanded to the circuit court for proceedings consistent with this decision.

Affirmed, in part, Vacated, in part, and Remanded.

**ISSUED:** July 15, 2024

---

[20] In 2022, the judgment interest rate was set at 4%. In 2023, the judgment interest rate was set at 7%.

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear